SCHOOL COMMITTEE OF SALEM *vs.* DAVID R. GAVIN.

Essex.   December 9, 1955. — March 2, 1956.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*School and School Committee.  Contract,* Validity, Athletic coach. *Municipal Corporations,* Contracts.

A contract in writing by the school committee of a city having a standard Plan B form of charter for the employment of an athletic coach under the authority of G. L. (Ter. Ed.) c. 71, § 47, as appearing in St. 1951, c. 411, § 1, at a salary of more than $1,000 was not subject to G. L. (Ter. Ed.) c. 43, § 29, as appearing in St. 1949, c. 723, § 2, as amended by St. 1951, c. 25, § 2, and was valid and binding on the city without the approval of the mayor.

BILL IN EQUITY, filed in the Superior Court on January 11, 1955.

The suit was heard by *Brogna*, J.

*A. Kenneth Carey*, for the defendant, submitted a brief.

No argument nor brief for the plaintiffs.

SPALDING, J. The plaintiffs are the duly elected school committee of the city of Salem. On January 15, 1953, the committee, by a four to three vote, elected the defendant to the position of coach of football at the Salem Classical and High School. On February 10, 1953, a majority of the committee voted that the defendant be given a three year contract as coach at a salary of $2,500 a season with the right, at the defendant's option, of renewing the contract for an additional year at the same salary. In accordance with this vote a contract was executed between the committee and the defendant in April, 1953. The mayor of Salem did not concur in the committee's action and the contract did not bear his approval. On December 13, 1954, the committee voted to declare the position of football coach at the classical high school vacant. If the above mentioned contract is valid the parties are ready, able, and willing to perform. The city operates under "a standard Plan B form of charter."

The committee, alleging that a controversy exists between it and the defendant concerning the validity of the contract, brought this bill for declaratory relief under G. L. (Ter. Ed.) c. 231A. The case was heard on the facts above stated, which were agreed to by the parties. The judge entered a decree declaring that the contract was invalid because it did not bear the approval of the mayor. The defendant appealed.

For the general principles relating to the powers and duties of school committees and to the obligations of municipalities in connection therewith, a reference to *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, *Callahan* v. *Woburn*, 306 Mass. 265, *Ring* v. *Woburn*, 311 Mass. 679, and *Hayes* v. *Brockton*, 313 Mass. 641, is sufficient.

General Laws (Ter. Ed.) c. 43, § 29, as appearing in St.

1949, c. 723, § 2, as amended by St. 1951, c. 25, § 2, provides that "All contracts made by any department, board or commission where the amount involved is one thousand dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor under Plan A, B or C, or of the city manager under Plan D or E, and also of the officer or the head of the department or of the chairman of the board, as the case may be, making the contract is affixed thereto. . . ." The contract here involves more than $1,000 and there was no approval of it by the mayor of Salem which, as stated above, is operating under Plan B. And previously we have held that in a city having one of the standard forms of charter set forth in c. 43 the school committee is a "department" or a "board" within the meaning of c. 43, § 29, with respect to a contract providing for the transportation of school children, and that such a contract negotiated and adopted by the committee was not valid without the approval of the mayor. *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, 233. See *Hayes* v. *Brockton*, 313 Mass. 641, 648. Thus, if the contract here was of the sort under consideration in the *Eastern Massachusetts Street Railway* case, it would not be valid because of lack of approval by the mayor. But the court in that case was careful to confine its decision to the type of contract there involved, namely, one of a commercial nature as distinct from those traditionally under the exclusive and untrammelled control of school committees. At page 238 the court said, "We do not decide, for example, that the employment of a teacher . . . even though it might carry a salary of over $500 [as the statute then read], would require the approval of the mayor under G. L. (Ter. Ed.) c. 43, § 29."

We must decide, therefore, whether the subject matter of the contract before us is of the sort over which the authority of the school committee is supreme and, if so, whether the limitations imposed by § 29 are applicable.

We are of opinion that the contract here is one which the school committee alone had the power to make and that it

was not subject to § 29. General Laws (Ter. Ed.) c. 71, §§ 37 and 38, provide that school committees shall have general charge of the public schools and shall elect and contract with the teachers thereof. The supervision of athletics, including the hiring of coaches, is granted to the school committee by G. L. (Ter. Ed.) c. 71, § 47, as appearing in St. 1951, c. 411, § 1, which provides, in part, that the "committee may supervise and control all athletic and other organizations composed of public school pupils and bearing the school name or organized in connection therewith. . . . Expenditures by the committee for the organization and conduct of physical training and exercises, athletics, sports, games and play . . . and for the employment of experienced athletic directors to supervise said physical training and exercises, athletics, sports, games, and play, shall be deemed to be for a school purpose." See now St. 1954, c. 220. In granting to school committees this broad supervisory control over athletics the Legislature must have intended to place such matters as the selection of athletic coaches and the power to contract with them exclusively under the committee's control. Such power would be seriously thwarted if its exercise was conditioned on approval by the mayor. A contract with an athletic coach is more closely akin to a contract with a teacher than it is to one for the transportation of pupils. Hence decisions such as *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, are not controlling. We are confirmed in this conclusion by the fact that the grant of authority to the school committee here (§ 47) is found in c. 71, which was not the case with the statute involved in the case just cited. We hold, therefore, that the contract under consideration was valid notwithstanding the fact that it lacked the approval of the mayor.

It follows that the decree is reversed and a new decree is to be entered in conformity with this opinion.

*So ordered.*