RICHARD D. KIMBALL CO. *vs.* CITY OF MEDFORD
(and a companion case[1]).

Middlesex.    March 11, 1960. — April 28, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Municipal Corporations*, Contracts. *School and School Committee. Contract*, With municipality. *Practice, Civil*, Case stated, Requests, rulings and instructions.

Where an action was heard in the Superior Court on agreed facts amounting to a case stated, requests for rulings had no standing; it was the duty of the judge to order the correct judgment on the agreed facts. [728–729]

In a city having a Plan E charter, the authority of the school committee under G. L. c. 43, § 33, to "make all repairs" to school property is subject to the limitations of § 29, and an architect and an engineer who each rendered services in an amount involving $1,000 or more in connection with the repair of school property in reliance on an alleged written contract not bearing the written approval of the city manager were not entitled to recover for their services from the city. [730–732]

TWO ACTIONS OF CONTRACT.    Writs in the Superior Court dated June 7, 1956.

The actions were heard by *Macaulay, J.*

*Mark E. Gallagher, Jr.*, City Solicitor, (*Daniel F. Riley*, Assistant City Solicitor, with him,) for the defendant.

*Richard W. Bishop*, for the plaintiffs.

SPALDING, J.    These are two actions of contract, which were heard together on agreed facts.    In one, the plaintiff Tiffany, an architect, seeks to recover for services rendered to the school committee (committee) of the city of Medford (city); in the other, the plaintiff Richard D. Kimball Co. (Kimball) seeks to recover for engineering services rendered to the committee.

The city has one of the standard forms of charter (Plan E) contained in G. L. c. 43.    See §§ 1–45, 93.    In November,

---

[1] The companion case is by Carroll H. Tiffany against the same defendant.

1954, the committee voted to add $3,000 to its 1955 budget to engage a consulting architect "for the purpose of drawing up specifications, providing plans and making recommendations . . . on major repairs and renovations to existing school property." This amount was appropriated and Tiffany was selected by the committee as its consultant. By a letter from the superintendent of schools dated May 10, 1955, Tiffany was notified that he had been "appointed consultant architect."

In June, 1955, the committee voted that Tiffany be authorized "to secure professional plumbing and electrical advice in connection with the repairs to the Lincoln Elementary School and that $1,000 be made available for this purpose from the account 'maintenance of school plant.'" By a letter from the superintendent, Tiffany was notified of this vote and he hired Kimball to assist him. In doing so, he furnished Kimball with a copy of the superintendent's letter which contained a copy of the committee's vote.

Tiffany performed services "on the Lincoln School project," and on November 21, 1955, he submitted a bill for $1,500 covering a period from May to November, no part of which has ever been paid.

Kimball inspected the Lincoln School and "drafted plans and specifications for the . . . electrical and plumbing work." This work was performed at Tiffany's request. Kimball submitted a bill to the committee for $1,000 which has never been paid.

Other than the above mentioned letters there was no contract "in writing" between either Tiffany or Kimball and the city. And none of these documents bore the written approval of the city manager. See G. L. c. 43, § 29.

The judge ordered judgment for Tiffany in the sum of $1,500, and judgment for Kimball in the sum of $1,000. To these orders the city excepted. The city also excepted to the denial of certain of its requests for rulings, but these need not concern us. Where, as here, cases have been submitted on agreed facts amounting to a case stated, requests have no standing; it is the duty of the judge to order the

correct judgment on the agreed facts. *Howland* v. *Stowe,* 290 Mass. 142, 146. *Commonwealth* v. *Alleged Gaming Apparatus & Implements & Money,* 335 Mass. 223, 225.

Despite the terms of the committee's vote which authorized the services of an architect in connection with "major repairs and renovations to existing school property," we assume in the plaintiffs' favor that the services for which recovery is sought related to repairs, as distinct from alterations, on school property.[1]  General Laws c. 43, § 33, which is part of the city's charter (see G. L. c. 43, § 45), provides that "Except as otherwise provided in this chapter . . . the school committee, in addition to the powers and duties conferred and imposed by law on school committees, . . . may make all repairs, the expenditures for which are made from the regular appropriation for the school department, [and] shall have control of all school buildings and grounds connected therewith."  Another provision of the city's charter (G. L. c. 43, § 29) reads, "All contracts made by any department, board or commission where the amount involved is one thousand dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the . . . city manager under Plan . . . E, and also of the officer or the head of the department or of the chairman of the board . . . making the contract is affixed thereto. . . ."

It is familiar law that one dealing with a city or town cannot recover if statutory requirements such as are contained in the defendant's charter have not been observed, and the burden of proving compliance with such requirements rests upon the plaintiff. *Continental Constr. Co.* v. *Lawrence,* 297 Mass. 513, 516. *Dos Santos* v. *Peabody,* 327 Mass. 519, 520–521.  Admittedly, the requirements of § 29 were not satisfied.  The question, then, is whether the powers conferred on the school committee by § 33 are subject to the

---

[1] General Laws c. 43, § 34, provides, in part, "No plans for the construction of or alterations in a school building shall be accepted, and no work shall be begun on the construction or alteration of a school building, unless the approval of the school committee and the mayor is first obtained.  This section shall not require such approval for the making of ordinary repairs."

limitations contained in § 29. In a long line of decisions (of which only a few need be cited) this court has recognized and upheld the supremacy of school committees in the field of education and matters closely related thereto. *Leonard* v. *School Comm. of Springfield,* 241 Mass. 325. *Ring* v. *Woburn,* 311 Mass. 679. *Hayes* v. *Brockton,* 313 Mass. 641. *School Comm. of Salem* v. *Gavin,* 333 Mass. 632. And where there have been departures from the historic independence of school committees, we have required that they be "expressed in clear language and not left to doubtful implication." *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 363.

On its face § 29 applies to the city's school committee acting under § 33, for a school committee in a city having one of the standard forms of charter set forth in c. 43 is a "department" or a "board" within the meaning of § 29. *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232, 233. We must, therefore, determine whether the authority conferred on school committees under § 33 to "make all repairs" is so necessary to the maintenance of the time honored independence of school committees that a legislative intent to subject that section to § 29 was unlikely. Although the question is not free from doubt, we are of opinion that the authority conferred on the school committee to make repairs is subject to the limitations of § 29. In *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232, where a "Plan A" charter was involved, it was held that § 29 limited the school committee's authority under G. L. c. 40, § 4,[1] to contract for the transportation of school children. In *School Comm. of Gloucester* v. *Gloucester,* 324 Mass. 209, the city of Gloucester adopted an ordinance establishing a purchasing department to purchase all supplies, material and equipment required for the city and for every department thereof, and providing that the school committee should send a requisition to the purchasing agent to purchase textbooks. The ordinance was adopted pursuant to

---

[1] See now G. L. c. 71, § 68.

G. L. c. 41, § 103, authorizing the establishment of a municipal purchasing department to "purchase all supplies" for the municipality. It was held that, despite c. 71, § 48, empowering school committees to purchase textbooks and other school supplies, the ordinance was binding on the school committee.

The power of a school committee to make repairs is surely no broader than its powers to provide for transportation of pupils and to purchase school supplies, yet the statutes involved in the two cases just mentioned were held to impose limitations on the powers of the school committee. What was said at page 237 in the *Eastern Mass. St. Ry.* case (*supra*) is pertinent here. "Contracting for the furnishing of transportation of school children bears only a secondary relation to education. . . . In general, these [contracts requiring the mayor's approval] are mere business transactions. They do not as a rule directly relate to methods of education or to the policy, conduct, regulation and discipline of the schools. Ordinary commercial contracts have never hitherto been held to belong in the field in which by long established policy and tradition school committees have exercised exclusive and untrammeled control." We are of opinion that § 29 was intended to control contracts for repairs by placing the business affairs of the city in "centralized hands." *School Comm. of Gloucester* v. *Gloucester*, 324 Mass. 209, 218.

The cases at bar are distinguishable from *School Comm. of Salem* v. *Gavin*, 333 Mass. 632, on which the judge seems to have relied. There it was held that compliance with § 29 was not necessary where a school committee contracted for the services of an athletic coach under G. L. c. 71, § 47. We said at page 635, "A contract with an athletic coach is more closely akin to a contract with a teacher than it is to one for the transportation of pupils." A contract for repairs bears closer resemblance to the latter than to the former.

We are mindful that in *Ring* v. *Woburn*, 311 Mass. 679, 688, it was held that a school committee had the authority to make necessary repairs to school property under G. L.

c. 71, § 68, and that the city of Woburn was obligated to appropriate such funds for these repairs as the committee considered necessary. But the Woburn charter did not contain provisions similar to those contained in § 29. That case, therefore, did not present the question here involved.

It follows that because the requirements of § 29 were not satisfied, the orders for judgment in favor of the plaintiffs were erroneous. This is a harsh result, as there is no suggestion that the plaintiffs did not fully and faithfully perform the services requested of them. But, as we said earlier, one who contracts with a municipality can recover only if the statutory safeguards governing its contracting powers are satisfied. Any other rule, however appealing it may be in an individual case, would in the long run render such safeguards worthless; it would be another instance of a hard case making bad law.

*Exceptions sustained.*
*Judgment for the defendant*
*in each case.*