QUINTIN VESPA CO., INC. *vs.* CONSTRUCTION SERVICE
COMPANY & another
(and a companion case).

Suffolk.   January 3, 1962. — February 6, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Contract,* Construction, Building contract, Performance and breach.  *Practice, Civil,* Case stated, Requests, rulings and instructions.

A record in an action containing a stipulation by the parties that an auditor's report would "be accepted as an agreed statement of facts, subject to . . . [certain] additions, modifications, and amendments," and a recital that the case was heard without jury "upon the agreed facts," showed that the parties intended to present a case stated.   [548, 551]

It was the duty of the trial judge and of this court to order the correct judgment on the agreed facts in an action presented on a case stated, irrespective of requests for rulings, which had no standing.   [551–552]

A contract between a contractor laying sewer pipe for a town and a subcontractor for boring a tunnel and installing casing for the pipe under an aqueduct, including provisions requiring the furnishing of an access

trench of certain dimensions for the subcontractor's work and any necessary "pumps and/or well point systems" "by others" than the subcontractor and requiring the contractor to "prepare and maintain the job site" without impediment to the immediate and continuous performance of the subcontractor's work, did not impose on the subcontractor the obligation to install in the trench sheeting and shoring ordered by the town's engineer, or to pay for it when installed by the contractor, even though in the provision of the contract describing work to be done "by others" the words "sheeting and shoring if required" had been deleted before execution of the contract; and a failure by the contractor, for twelve days after the subcontractor had his equipment and workmen on the site, to finish an adequate trench and to free it from water coming into it "in large quantities" justified the subcontractor in removing his equipment and workmen and excused him from further performance, without his incurring liability to the contractor, and entitled the subcontractor to recover damages from the contractor. [552–554]

Two ACTIONS OF CONTRACT. Writs in the Superior Court dated October 2, 1956.

The actions were heard by *J. V. Sullivan,* J.

*Edward J. Barshak,* (*Samuel Winetsky* with him,) for Quintin Vespa Co., Inc.

*Francis T. Leahy,* for Construction Service Company.

CUTTER, J. These are cross-actions (a) by Quintin Vespa Co., Inc. (Vespa) against Construction Service Company (Construction) and Maryland Casualty Company, surety on bonds furnished by Construction in connection with a contract, and (b) by Construction against Vespa. The cases were consolidated and referred to an auditor. After the filing of his report, the parties stipulated "that the auditor's report will be accepted as an agreed statement of facts, subject to . . . [certain] additions, modifications, and amendments." They also agreed that if, under the contract, "Construction was to do the work of sheeting and shoring, then the finding should be in favor of Vespa; if Vespa was to do the sheeting and shoring, then the finding should be in favor of Construction." The cases were tried by a judge in the Superior Court, without jury, "upon the agreed facts." Both parties submitted requests for rulings of law. The judge "found" for Construction in each case and, in the case brought by Construction, assessed its damages at $1,530.46. The case is here on Vespa's exceptions to the findings and to the granting and denial of vari-

ous requests for rulings. The facts are stated from the auditor's report as augmented.

In 1956, Vespa was laying sewer pipe under a contract with the town of Framingham. It became necessary to place the pipe and its casing under an aqueduct. Vespa approached Construction to do the work,[1] and Construction offered to "take over the entire work that Vespa was to do in this segment [of the whole sewer job] — for . . . $5,000 . . . . Vespa refused this offer." Construction then offered for $2,500 "to furnish the equipment and install the casing . . . [if] Vespa was to furnish the labor and materials and dig the required access trench." Construction submitted a proposal to this effect which in part is set out in the margin.[2] The proposal was on a printed proposal form used by Construction.[3] "Vespa told Strickland, Con-

---

[1] Construction was to place a boring machine in a trench to be provided by Vespa. "The machine would then bore horizontally into the earth [a hole of twenty-eight inches in diameter] at the same time install the casing. . . . The machine was in essence a large auger with spiral grooves between spiral flanges."

[2] The following language was typed upon page 1 of the proposal. "[L] This proposal covers the installation of 1 — 28″ casing 30 ft. long at Framingham, Massachusetts. [M] This proposal is based on the following services, materials, and equipment being furnished, installed, and/or performed by others: All required excavation, backfill and cleanup. [N] A trench shall be provided with a minimum length of 45 ft. a minimum width of 8 ft. at the bottom and 18″ in depth below the bottom of the casing. 1 — 40 ft. length of 28″ casing pipe. [O] *Sheeting and shoring if required.* [Initials appear at this point] [P] Pumps and/or well point systems if wet conditions exist or are encountered in the work. *Operation of this* [initials appear here] *equipment shall be performed by others.* [Initials appear here] *Watchmen, flagmen, barricades, lights, signs, access roads, etc., as required.* [Initials appear here] [Q] If any obstructions such as rock, boulders, concrete, steel, or any other materials, that the machine is incapable of boring at a rate satisfactory to us, are encountered during the boring operation, this contract shall be converted to a time and material agreement carrying a fixed fee of 15% for overhead and 10% for profit . . . . All expenses incurred, prior to striking the obstruction, shall be invoiced . . . and the lump-sum bid shall be deleted from the contract."
The capital letters [L], [M], [N], [O], [P], and [Q] have been inserted above for ease of reference to the quoted portions of the proposal. In the original proposal the italicized words have been struck out by a line through them and initialed.

[3] The form contained the following printed provisions: "(2) This proposal is subject to our receipt . . . at Bound Brook, New Jersey, of your prompt acceptance . . . . It is also subject to final approval by . . . this company at Bound Brook, New Jersey . . . . Such contract shall be construed under and governed by the law of . . . New Jersey . . . applicable to contracts entered into and to be performed within said state. . . . (4) We shall not be liable for any damage or delays caused by other than our officers or employees or for any damage or delays caused by strikes . . . embargoes, fires, accidents . . . floods . . . inclement weather or any other causes beyond our control.

struction's foreman, that he would not sign the contract if he were required to install sheeting and shoring. Strickland thereupon telephoned Van Nest, Construction's vice president, . . . and . . . repeated Vespa's objections. . . . Van Nest asked Strickland if Strickland thought sheeting and shoring would be necessary, and Strickland said 'no.' Van Nest then authorized Strickland to strike out the following words in the proposal as originally submitted [the omitted material included the words "sheeting and shoring if required" and the other italicized words of the proposal, see footnote 2, *supra*] . . . . [B]oth parties initialed the deletions. Thereupon the contract was executed as per copy . . ." attached to the auditor's report.

"Shortly after the excavation work had started, water came into the trench in large quantities, causing the sloping sides to slough off and filling the trench so that pumps had to be operated continuously. This condition practically put a stop to the excavation work. Only thirty feet in length were completed and even that part was not fully down to grade. Pumps were supplied by Vespa and operated by Construction. At that point, the town engineer . . . ordered Vespa to put in shoring and sheeting at the aqueduct end of the trench, lest the stability of the aqueduct be affected by . . . erosion . . . . Vespa demanded that Strickland do the sheeting, but Strickland refused. Vespa thereupon installed some shoring and sheeting at the aqueduct end of the trench and about thirty feet down the sides, but not enough to box in the whole trench. . . . Vespa demanded that Construction pay for it. Construction refused. . . .

"Over twelve days . . . had elapsed by this time, during which . . . Construction had had its equipment and men

The time . . . for doing the work . . . shall be extended for the . . . periods of all delays resulting from any such causes. . . . (14) Unless otherwise herein provided to conform with a mutually agreed upon schedule, you agree to prepare and maintain the job site so that no impediment exists therein or thereon to prevent or hinder us in any way from immediately commencing operations and doing any and all work under the proposal continuously. (15) Unless specifically mentioned herein, this proposal does not contemplate sheeting and/or shoring, in accordance with New Jersey Revised Statutes, Title 34, Chapter 5, and you are to reimburse us for any costs incurred by us in such compliance including suitable overhead and profit charges thereon."

continuously on the job. The trench was still unfinished
and it seemed unlikely that it could be finished at all unless
a well-point system was installed. The sheeting used by
Vespa . . . had been improperly placed. It failed to hold
back either the water or the bank. It was in a state of
collapse. Van Nest . . . inspected the work. . . . [H]e
ordered Construction's equipment to be removed, and called
off his working force." Vespa then entered into a contract
with another firm to do the work.

The auditor found that, if there was a breach of contract
by Construction, Vespa's damages were $3,500 and that, if
there was a breach by Vespa, "Construction should be
awarded as . . . [the] sum by it expended . . . $1,530.46
. . . in furnishing equipment and crew." His conclusions
are summarized in the margin.[4]

1. The agreement as to the facts contained in the aug-
mented auditor's report, which had attached the contract
itself, presents a case stated. No evidence was considered
by the trial judge. It would have avoided some doubt and
confusion if the parties had been explicit in stipulating that
they intended to present a case stated. Nevertheless, this
is the substance of what they have done. Their agreement
was not merely an agreement as to evidence. Cf. *King
Features Syndicate, Inc.* v. *Cape Cod Bdcst. Co. Inc.* 317
Mass. 652, 653. The interpretation of the written contract
is, of course, a matter of law. The requests for rulings
need not concern us. They have no standing. It was the
duty of the trial judge and it is our duty to order the correct

---

[4] The auditor concluded "1. That the elimination by striking out the three
lines . . . of the contract [see footnote 2, *supra*] . . . did not materially
alter the obligations of the parties, and that it was the intention of both parties
. . . that Vespa was to do all the required excavation . . . provide a trench
[of stated dimensions] . . . and . . . to furnish . . . [pipe] as a condition
precedent to . . . [its] installation . . . by Construction. 2. That Construc-
tion . . . [seasonably] furnished its equipment and crew . . . but was unable
to start operations due to . . . [Vespa's] failure . . . to furnish the . . .
trench. 3. That the elimination of the lines . . . of the contract [see foot-
note 2, *supra*] did not require Construction to furnish . . . the sheeting and
shoring, nor to operate the pumps or well point system if wet conditions were
encountered . . . . 5. That the elimination of the words 'sheeting and shor-
ing if required,' is . . . [not] equivalent to a substitution . . . of the words,
'sheeting and shoring' to be installed . . . by Construction. 6. That . . .
[Vespa's] failure . . . within a reasonable time to provide the trench . . .
justified Construction in withdrawing its equipment and crew."

judgment on the agreed facts. *Richard D. Kimball Co.* v. *Medford,* 340 Mass. 727, 728-729.

2. The interpretation of the contract[5] involves, among other things, the significance, if any, of (a) the deletion of the words "sheeting and shoring if required" (see footnote 2, *supra,* at point [O]); (b) the presence in the proposal of such provisions as those with respect to a trench and a possible well point system (see footnote 2, *supra,* at points [N] and [P]); and (c) par. (14) of the printed standard proposal provisions (see footnote 3, *supra*). We consider these matters in order.

(a) The deletion of the words "sheeting and shoring if required" grew out of Vespa's refusal to "sign the contract if he [Vespa] were required to install sheeting and shoring." Although it was found that the words were omitted after Construction's foreman expressed the opinion that no sheeting and shoring "would be necessary," the precise reasons and motives for the deletion are not clear from the auditor's report. Construction may have agreed to the deletion, in part at least, because it was of opinion (a) that the deleted words were unnecessary or redundant, and that the remaining contract provisions adequately protected it, or (b) that they had at least primary reference to the burden of shoring as a safety precaution for workmen which was unlikely to be necessary, and which, perhaps, might be covered by par. (15). See footnote 3, *supra.* See *Fred C. McClean Heating Supplies, Inc.* v. *Jefferson Constr. Co.* 339 Mass. 356, 363. Even if we assume that the deletion of the omitted words may be used in interpretation as a part of "the circumstances attending the making of the contract" (see *Krinsky* v. *Leventhal,* 323 Mass. 160, 161-162; cf. *Kennon* v. *Shepard,* 236 Mass. 57, 59), the deletions in

5 The briefs discuss to some extent whether the law of Massachusetts or that of New Jersey governs the contract and its interpretation. In view of par. (2) of the printed portion of the proposal (see footnote 3, *supra*) we assume that reasonable effect should be given to the selection of the governing law by the parties and that New Jersey law applies. See *Maxwell Shapiro Woolen Co. Inc.* v. *Amerotron Corp.* 339 Mass. 252, 257-258; Restatement 2d: Conflict of Laws (Tent. draft no. 6, Apr. 22, 1960) §§ 332a, 334e, 346, 346a. We need not consider what would have been the applicable law in the absence of the parties' selection of the governing law. No significant difference between the Massachusetts and the New Jersey law of contracts has been brought to our attention.

themselves do not point with clarity to any particular interpretation of the remaining provisions. In view of the limited character of the work to be done by Construction (see footnote 1, *supra*) and of par. (14) of the printed provisions (see footnote 3, *supra*), imposing upon Vespa the obligation of preparing and maintaining the job site, and of Vespa's obligation (see footnote 2, *supra,* at point [N]) to provide a trench, we are of opinion that the ambiguous deletion cannot be viewed as creating an affirmative undertaking by Construction to provide sheeting and shoring.

(b) Performance by Construction was prevented because "water came into the trench in large quantities . . . . This condition practically put a stop to . . . excavation . . . . Pumps were supplied by Vespa and operated by Construction." Then, to protect the aqueduct, the town engineer "ordered Vespa to put in shoring and sheeting." The water condition, as the auditor found, would probably prevent the trench from being "finished . . . unless a wellpoint system was installed." Such an installation was the responsibility of Vespa. See footnote 2, *supra,* at point [P]. There is no finding by the auditor that "shoring and sheeting" were required to permit Construction to do its work or for any reason other than to protect the aqueduct. The explicit burden placed upon Vespa to install a well point system supports the conclusion that Vespa (and not Construction) was bound by the agreement to put in whatever facilities might become necessary to permit Construction's work to continue unimpeded, at least by water.

(c) Paragraph (14)[6] imposed on Vespa the duty "to prepare and maintain the job site" so that the work (see footnote 2, *supra,* at point [L]) could go on continuously. This provision in terms is broad enough to require Vespa to do whatever might become necessary (including any necessary sheeting and shoring) to maintain the job site in

---

[6] Wholly consistent with par. (14) is the provision (see footnote 2, *supra,* at point [Q]) for converting the contract into a time and material agreement in certain eventualities. This provision may not refer to obstruction from water, as opposed to solid material. It, and the provisions of par. (4), see footnote 3, *supra,* do show, however, that Construction took precautions to relieve itself from liability or risk because of delay not its own fault, particularly delay based upon conditions at the job site.

such condition that the work at no time would be impeded.

We reach this conclusion without interpreting par. (15) of the printed standard provisions (see footnote 3, *supra*). Paragraph (15) expressly relieves Construction of the cost of sheeting and shoring to comply with certain New Jersey statutory safety provisions (N. J. Rev. St. Tit. 34, c. 5, § 21), comparable to those found in G. L. c. 149, § 129A (as amended through St. 1956, c. 431). It thus is unnecessary to consider whether par. (15) has any application either outside of New Jersey or where sheeting and shoring are required for reasons other than to ensure the safety of workmen.

Since we construe the contract as imposing no affirmative obligation upon Construction to provide sheeting and shoring, it was not bound to pay for that demanded by the town engineer. Vespa's failure, for twelve days after Construction had its equipment and crew in place, to meet its obligation under par. (14) to put the job site in condition for immediate and continuous work and to complete the trench effectually prevented Construction from performing the contract. This, as the auditor concluded, "justified Construction in withdrawing its equipment and crew." Vespa's failure was a material prevention of performance by Construction and a breach of a duty imposed upon Vespa by the contract which excused Construction from further performance. See *Hanig* v. *Orton,* 119 N. J. L. 248, 251–252. See also *Nevins* v. *Ward,* 320 Mass. 70, 73; *Wolf* v. *Marlton Corp.* 57 N. J. Super. 278, 285; Corbin, Contracts, § 947. Vespa's failure also prevents any recovery by it from Construction, and entitles Construction to its damages caused by the breach. See *Morgan* v. *Burlington,* 316 Mass. 413, 416–418; *Dale Sys. Inc.* v. *Wichroski,* 320 Mass. 319, 322–323; *Tanenbaum* v. *Francisco,* 110 N. J. L. 599, 604–605. See also *Frank Stamato & Co.* v. *Borough of Lodi,* 4 N. J. 14, 21; Restatement: Contracts, §§ 269, 295, 312, 315. Cf. *Vander Realty Co. Inc.* v. *Gabriel,* 334 Mass. 267, 270; *Gordon* v. *Southgate Park Corp.* 341 Mass. 534, 537–538. There was no error in ordering judgments for Construction.

*Exceptions overruled.*