*Western District*
S. C. # 114802.
D. C. # R-53-66.

## FONTAINE BROS., INC.

### v.

## CITY OF HOLYOKE

Argued: Oct. 3, 1967    Decided: Nov. 3, 1967

*Present:* Garvey, P.J. Moore, J. and Allen, J.

Tried to: *Donohue, J.* in the District Court of Holyoke. S.C. #114802. D.C. #R-53-66

*Garvey, P.J.* This action of contract was transferred under G.L. c. 231, § 102C to the District Court for trial. The plaintiff seeks payment for work performed at the direction of the city's board of public works and its architect, in repairing flood damage caused by a water pipe bursting during the course of the construction, by it, of a new high school building. The city pleaded, *inter alia,* that recovery

was barred because of non-compliance with a provision of its charter. There was a finding for the plaintiff and damages assessed in the amount of $14,335.43. The city claimed a report.

The trial judge's findings of fact, warranted by the evidence, show that on August 19, 1963 the plaintiff, Fontaine Bros., Inc. (Fontaine) and the city executed a written contract whereby Fontaine agreed to construct for the city a new high school building. On October 10, 1964, before the construction was completed, but after the school was occupied, a water pipe installed by the city's water department separated about twenty (20) feet from its entrance into the building. Escaped water flooded the basement surrounding the swimming pool, and "carried about two hundred thirty-three (233) cubic yards of dirt, sand and silt into the basement clogging electrical and plumbing lines and entering the swimming pool filter system".[1]

On October 27, 1964, the head clerk of the city's board of public works (The Board) notified the architects of the project, in writing, that at a meeting held that day its members had voted "to approve a change order in the amount of $12,574.93 to Fontaine for repairing the damage that was allegedly caused by failure of an outside water main", and " a change

---

[1] The evidence indicated that all parties concerned recognized that this created an emergency and the court so found.

order in the amount of $1,241.90. . .for the construction of two catch basins and 8″ drain line near the Elm Street entrance''.

By letter dated the following day, the architects notified Fontaine that ''we have been directed to have you and the specified subcontractors proceed *at once* with the corrections listed. . .Attached is a copy of the letter of October 27, 1964 from the Board of Public Works authorizing this action. A change order is being prepared and will follow promptly.''[2] (Emphasis supplied) Immediately upon receipt of this order Fontaine commenced the work and completed it on November 8, 1964 in a good and workmanlike manner.

Two sections of the ''General Conditions'' of the original contract read:

> Sec. 3b ''Except for minor modifications in the work not involving extra cost or additional time and not inconsistent with the purposes of the project, *and except in an emergency endangering life or property, no extra work shall be ordered and no change in the drawings or specifications shall be made unless in pursuance of a written order from the owner*[3] *counter-signed by the architect-engineer authorizing the ex-*

---

[2] There was testimony by a member of the Board that the change order was not signed by its members because, in their opinion, and in the opinion of the City Solicitor, it was not necessary.

[3] We construe "owner" to be the members of the board of public works.

*tra work or change, and no claim for an addition to the contract amount shall be valid, unless so ordered."* (Emphasis supplied)

Sec. 15c "In an *emergency* affecting the safety of life or property, including adjoining property, the contractor, without special instructions or authorization from the owner, is authorized to act at his discretion to prevent such threatened loss or injury and he shall so act, *if instructed to do so by the owner or the architect-engineer*. Any extra compensation claimed by the contractor on account of such emergency work shall be determined by the architect engineer."

The only issue raised and argued by the city is its contention that because the change order did not have the Mayor's approval in writing, Fontaine cannot recover.

Section 52 of the city's charter, St. 1896, c. 438, provides:

"All contracts made by any department of the city shall, when the amount involved is *five hundred dollars or more,* be in writing and no such contract shall be deemed to have been made or executed *until the approval of the mayor is affixed thereto.* All such contracts shall be accompanied by a bond, with sureties satisfactory to the board or committee having the matter in charge, or by a deposit of money or other security for the faithful performance of

such contract; and such bonds or other security shall be deposited with the city auditor until the contract has been carried out in all respects; and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer making the contract *with the approval of the mayor affixed thereto.*'' (Emphasis supplied)

''The main aim [of such a charter or statutory provision] is to protect the public'' and its ''treasury'' and ordinarily such a statute or charter provision cannot be put to naught by contract. *Morse* v. *Boston,* 253 Mass. 247, 252-253.

The court in *Richard D. Kimball Co.* v. *Medford,* 340 Mass. 727, said:

''It is familiar law that one dealing with a city or town cannot recover if statutory requirements such as are contained in the defendant's charter have not been observed and the burden of proving compliance with such requirements rests upon the plaintiff.''

This stringent rule should not be applied to the case under consideration. See *M. Demateo Construction Co.* v. *Com.,* 338 Mass. 568, 583.

We see nothing illegal or in derogation of § 52 of the city's charter in the cited provisions, approved by the Mayor, of the general contract. They merely provided, in the best interests of

the public, a means by which prompt and
less formal action could be taken to remedy a
condition caused by an emergency endangering
the city's property arising during the course of
construction. Nothing in the city's charter
adopted in 1896 seems to prohibit it and no
case has been cited or found making such a
contract provision illegal. The legislature by
recent enactments has recognized the need for
permitting such action by cities and the State.
See G.L. c. 43, § 28 and G.L. c. 29, § 20A. *M. De-
mateo Construction Co.* v. *Com.,* 338 Mass. 568,
582. *Safford* v. *Lowell,* 255 Mass. 220, 225.

The letter of the head clerk of the Board
to the architects advising them of the Board's
vote authorizing the change order [nothing in
the report indicates that this letter did not ac-
curately express the vote of the Board or that
the Mayor disapproved this action] and the
architects transmittal of a copy of this letter
with a written order to Fontaine to proceed at
once with the required work was done in com-
pliance with the provisions of § 3B of the gen-
eral contract, which required a "written order
from the [Board] countersigned by the archi-
tect". See *Crane Construction Co.* v. *Com.,*
249 Mass. 249, 252-254. *M. DeMatteo Construc-
tion Co.* v. *Com.,* 338 Mass. 568, 583.

Fontaine, in reliance on the written promise
of the city, did the required work. In the ab-
sence of any hint of fraud or scheme to cir-
cumvent charter or statutory provisions we

see no valid legal reason, on the established facts, why the city should not be held to its promise to pay.

There being no prejudicial error, **an order should be entered dismissing the report.**

FREDERICK S. PILLSBURY
of Springfield for the plaintiff

RALPH J. CHOUINARD
of Holyoke for the defendant.