UNITED STATES LEASING CORPORATION *vs.* CITY OF CHICOPEE.

Hampden. February 4, 1988. — April 19, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Municipal Corporations,* Contracts. *School and School Committee,* Contracts. *Contract,* With municipality. *Estoppel. Consumer Protection Act,* Governmental entity, Availability of remedy. *Practice, Civil,* Amendment.

A contract for leasing a computer system, signed by a city's superintendent of schools and its purchasing agent and approved by its school committee, was an ordinary commercial contract, and not an educational matter falling within a school committee's traditional area of exclusive control, and thus required the mayor's approval pursuant to the city charter in order to be binding on the city. [230-231]

A mayor's signature on warrants for payment of the first two of five annual installments due under a certain municipal contract did not fulfil a city charter requirement that such contracts receive the mayor's approval in order to be binding on the city. [231-232]

Assuming that municipalities may be amenable in some circumstances to claims under G. L. c. 93A, the Consumer Protection Act, the actions of a city's officials with respect to a certain contract for leasing a computer system did not constitute engagement by the city in "trade or commerce," a requisite for liability under the Act. [232-233]

A judge did not abuse his discretion in denying a motion by the plaintiff in a civil action to amend its complaint a second time, where the proposed amendment, which sought to add new defendants and new theories of liability, was filed almost four years after the original complaint's filing and less than six weeks before trial. [233]

CIVIL ACTION commenced in the Superior Court Department on December 10, 1981.

A motion for partial summary judgment was heard by *Eileen P. Griffin,* J., and the case was heard by *John F. Murphy, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*L. Jed Berliner* for the plaintiff.
*Thomas J. Donoghue* for the defendant.

HENNESSEY, C.J. In December, 1977, a lease agreement was executed whereby the plaintiff, United States Leasing Corporation, would purchase a National Cash Register Corp. (NCR) computer system and lease it to the defendant city of Chicopee (city) in return for five annual payments of approximately $24,000. The agreement was signed by the city's superintendent of schools and its purchasing agent, and the school committee passed a resolution in favor of entering into the agreement. In addition, the city solicitor signed a form provided by the plaintiff stating that the persons signing the lease had authority to do so and that the city could bind itself by signing the lease. The city tendered the first two annual payments. At this point, however, problems developed with the computer system and the city refused to make further payments.

On December 10, 1981, the plaintiff filed a complaint in Superior Court alleging breach of contract by the city. The plaintiff moved for summary judgment. The city responded in kind, arguing that the contract had not been approved by the mayor as required by the city's charter. Cf. G. L. c. 43, § 29 (1986 ed.). The city's motion was granted on April 21, 1982. The plaintiff was thereupon allowed to amend its complaint to allege a G. L. c. 93A violation. In May, 1984, a stay was ordered to allow the city to resolve its dissatisfaction with the computer system with NCR. The record does not indicate the result of these negotations.

On October 24, 1985, the case was reactivated. The plaintiff moved to amend its complaint a second time. The plaintiff sought leave to: add the city solicitor and the school committee as defendants on the c. 93A claim; add a negligence claim against the city solicitor; add claims holding the city and the school committee vicariously liable for the solicitor's negligence and directly liable for the negligent training and supervision of him; seek reformation of the agreement; seek recovery on the theory of quantum meruit. The motion to amend was denied in its entirety and, following a bench trial, judgment was entered in favor of the city on the c. 93A claim. The plaintiff appealed to the Appeals Court, and we transferred the case on our own motion. We affirm.

1. *The contract claim.*[1] The plaintiff argues that the historic power and independence of school committees, see, e.g., *Leonard* v. *School Comm. of Springfield*, 241 Mass. 325, 328-330 (1922), and the grant of authority to school committees to purchase equipment contained in G. L. c. 71, § 49A, allowed Chicopee's school committee to bind the city under the lease without mayoral approval despite the city charter's[2] requirement of such approval. We have addressed the tension between the historic independence of school committees and statutory[3] and municipal charter fiscal management provisions in a number of decisions. See, e.g., *School Comm. of Salem* v. *Gavin*, 333 Mass. 632, 635 (1956) (school committee's employment contract with football coach valid despite lack of mayoral approval); *School Comm. of Gloucester* v. *Gloucester*, 324 Mass. 209, 218 (1949) (school committee must follow statutorily prescribed purchasing procedures); *Eastern Mass. St. Ry.* v. *Mayor of Fall River*, 308 Mass. 232, 238 (1941) (mayoral approval required for school transportation contract); *Parkhurst* v. *Revere*, 263 Mass. 364, 371 (1928) (mayoral approval of contracts to purchase textbooks required). See *McLean* v. *Mayor of Holyoke*, 216 Mass. 62, 64-65 (1913) (court refuses writ of mandamus to require mayor to approve school committee's recommended contract for purchase of furniture).

---

[1] There is no merit in the plaintiff's contention that it should have been allowed to present evidence on its contract claim at trial despite the earlier summary judgment in the defendant's favor on that claim. That the summary judgment remained interlocutory in nature does not mean it was not determinative of the contract claim pending eventual appeal of the entire case.

[2] Section 58 of the Chicopee city charter reads as follows: "All contracts made by any department of the city shall, when the amount involved is two hundred dollars or more, be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor is affixed thereto. . . ." This language of § 58 tracks that contained in c. 43, § 29. The school committee is a department within the meaning of both of these provisions. See *Richard D. Kimball Co.* v. *Medford*, 340 Mass. 727, 730 (1960).

[3] Contrary to the plaintiff's contention, decisions involving municipalities with one of the standard form charters of c. 43 are apposite here due to the identity in language of c. 43, § 29, and § 58 of the city's charter.

The rule to be distilled from the above decisions is that the school committee is subject to statutory and charter based fiscal management provisions except when it is acting in an area directly related to the "methods of education or the policy, conduct, regulation and discipline of schools. Ordinary commercial contracts have never hitherto been held to belong in the field in which by long established policy and tradition school committees have exercised exclusive and untrammeled control." *Eastern Mass. St. Ry.*, *supra* at 237. See *School Comm. of Gloucester*, *supra* at 218. The agreement at issue here is an ordinary commercial contract which does not implicate the school committee's area of exclusive control. As such, mayoral approval of the lease agreement was required for it to become binding on the city.

The plaintiff makes two further arguments in connection with its contract claim. First, the plaintiff argues that by signing warrants authorizing payment of the first two annual installments, the mayor approved the contract. Second, the plaintiff contends that the city should be estopped from denying the contract. We find these arguments unpersuasive.

Statutory and charter provisions restricting the manner in which municipal funds may be expended serve the salutary functions of placing cities and towns on a sound financial basis and preventing waste, fraud, and abuse. See *Leonard*, *supra* at 331; *Lumarose Equip. Corp.* v. *Springfield*, 15 Mass. App. Ct. 517, 520 (1983). In order to advance these benign goals we have consistently and punctiliously held that "one dealing with a city or town cannot recover if statutory requirements such as are contained in the [city's] charter have not been observed." *Richard D. Kimball Co.* v. *Medford*, 340 Mass. 727, 729 (1960). See *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 595 (1976) (justification for this rule is that requirements are matter of public record). Consistent with this approach we have denied past entreaties to find implicit mayoral approval of a contract where the required explicit approval was lacking. *Goodyear Park Co.* v. *Holyoke*, 291 Mass. 11, 15-16 (1935) (mayor's signed recommendation to board of aldermen that bond should issue for purpose of the contract is

insufficient as mayoral approval of the contract). Similarly, we have refused to estop governmental entities from denying the existence of a contract where the statutory requirements were lacking, for to do so would circumvent our insistence that those requirements be satisfied precisely. See, e.g., *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth.*, 387 Mass. 687, 693-694 (1982).[4] Although we are not unsympathetic to the plaintiff's position, it has presented no argument compelling us to foresake our longstanding approach in this area. There was no error in granting the defendant's motion for summary judgment on the contract claim.

2. *The c. 93A claim.* The plaintiff argues that the judge below erred in ruling that the city did not violate c. 93A. The plaintiff relies on the school committee's resolution to enter the lease agreement, the school superintendent's and city purchasing agent's signing of the agreement, and the city solicitor's signing of the form provided by the plaintiff as establishing its c. 93A claim. The plaintiff argues that these actions misled it into believing it had entered into a valid contract, that the actions were unfair and deceptive within the meaning of c. 93A, and that consequently the plaintiff is entitled to relief under that statute. We disagree.

Chapter 93A contains no explicit indication that governmental entities are to be liable under its provisions. We need not decide, however, whether municipalities may in some circumstances be amenable to c. 93A claims, for even if that is so it is clear in the circumstances of this case that the city was not engaged in "trade or commerce." Such engagement is requisite for liability under the statute. G. L. c. 93A, § 11. We note

---

[4] The plaintiff erroneously assumes that our refusal to estop governmental bodies where the statutory requirements for contracting are not fulfilled flows from some attribute of sovereign immunity. This causes the plaintiff to argue that the city was acting in a proprietary manner in regard to the agreement at issue, and, therefore, it is proper to estop the city from denying the agreement's existence. As indicated above, however, the reason for not estopping governmental bodies where the statutory requirements for contracting are not fulfilled is to advance the fiscal management goals of those requirements. The plaintiff's argument is off point.

that the judge below ruled that the city was engaged in trade or commerce, but this conclusion was plainly wrong.

3. *The second amended complaint.* The judge did not abuse his discretion in denying the plaintiff's motion to amend its complaint a second time. The proposed amendment was presented almost four years following the original complaint's filing and less than six weeks before trial. The plaintiff's undue delay in pressing these claims justifies the judge's refusal to allow the amendment, see *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288, 289-292 (1977), particularly in light of the fact that the plaintiff at that late date was seeking to add new defendants and new theories of liability. See *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, 556-559 (1988). Further, our review of the proposed amendment convinces us that it stated no viable claims. *Jessie* v. *Boynton*, 372 Mass. 293, 295 (1977).

*Judgments affirmed.*