*Southern Division*

## LEO P. MURPHY
### v.
## PLYMOUTH NATIONAL BANK

*Present:* Nash, P. J., Cox & Sgarzi, JJ.

Case tried to ————, *J.*, in the Third District Court of Plymouth. No. 14088.

*Cox, J.* This is an action of replevin in which the plaintiff seeks to maintain his right to possession of an automobile described as a 1959 Rambler DeLuxe Sedan, Engine No. B245450, Serial No. D579885. *The case was tried upon an agreed statement of facts.* There was a finding for the defendant. The plaintiff claims to be aggrieved [a] by the refusal of the trial judge to rule as requested and [b] by the finding for the defendant.

On *November* 7, 1958 Northeast Auto Sales & Services, Inc. (Sales) sold under a conditional sales agreement the Rambler automobile to Northeast Auto Services, Inc. (Services). Both of those companies are Massachusetts corporations, both were retail automobile dealers, and both conducted their businesses on the same premises on Front St., in the Town of Scituate.

On *November* 7, 1958 Sales assigned the conditional sales agreement to the defendant bank for consideration. Possession of the automobile remained with Services, the conditional vendee. It is agreed that all filing requirements regarding financial statements and security agreements relating to the conditional sales agreement were complied with in accordance with G. L. c. 106, the Uniform Commercial Code.

The defendant bank had financed Sales

since August, 1958 to the extent of 25 or 30 cars. The bank knew that both companies operated on the same premises.

One Coghlin was a salesman for and officer in both Sales and Services. In August, 1959 the plaintiff negotiated with Coghlin for the sale and purchase of the automobile. It was at that time decided that the plaintiff should have the automobile, the terms of sale having been agreed upon. However, it was not until *November* 3, 1959 that the sale for $2400. was completed by the trading in of a 1953 Ford and $1900. On the same day, *November* 3, 1959, Coghlin gave the plaintiff a bill of sale on a billhead of Sales. At the time of the sale to the plaintiff he had no knowledge or notice of a prior security interest or recording thereof.

Because of a default in the terms of the conditional sales agreement, the bank on *March* 30, 1960 repossessed the automobile, at which time the plaintiff was still without knowledge of the defendant's security interest. Replevin followed.

■ The statement of agreed facts amounts to a case stated.

■ Therefore, it was the duty of the judge, as it now becomes the duty of the appellate division, to order the judgment required by the application of the correct principles of law to the facts stated.

■ Questions of fact as well as of law are now open for review by us. *Cassie v. City of Cambridge,* 317 Mass. 346, 347.

■ Requests for rulings which were de-

nied have no standing. *Associates Discount Corp. v. Gallineau,* 322 Mass. 490, 491. *Redden v. Ramsey,* 309 Mass. 225, 227. They did, however, raise the decisive question.

The case is governed by the Uniform Commercial Code, G. L. c. 106, which became effective on October 1, 1958. See St. 1957, c. 765 §1.

The decisive question is whether the plaintiff was a buyer in the ordinary course of business, in which event he takes free of the defendant's security interest even though the security interest is perfected and even though he knew of the existence of the security interest, which he did not (G. L. c. 106, §9-307(1), or whether he was a buyer of consumer goods, as the judge found, in which event he takes subject to the defendant's security interest. G. L. c. 106, §9-307(2).

In our opinion the agreed facts require the conclusion that the plaintiff was a buyer of the Rambler automobile in ordinary course of business and that his right is superior to that of the bank's security interest.

G. L. c. 106, §9-307(1) so far as material, provides that "a buyer in ordinary course of business (subsection (9) of section 1-201) . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." "Buyer in ordinary course of business" is defined in G. L. c. 106, §1-201(9) as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of

a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit . . ."

The comment in the Code relating to the definition of "Buyer in ordinary course of business" explains that the definition has been expanded to make clear the type of person protected, noting that its major significance lies in §2-403 and in the article on secured transactions (Article 9). §2-403(2) provides that "Any entrusting of possession of goods to a merchant *who deals in goods of that kind* gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." §2-403(3) provides that "Entrusting" includes any delivery and any acquiesence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiesence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law. §2-403(4) provides that "The right of other purchasers of goods and of lien creditors are governed by the Articles on Secured Transactions (Article 9). . . ."

Turning to G. L. 106, Article 9, relating to secured transactions, we find in G. L. c. 106, §9-109(1) that goods are described as "consumer goods" if they are used or bought for use primarily for personal, family or household purposes; and in §9-109(4) goods

are "inventory" if they are held by a person who holds them for sale or lease. The Code comment explains that goods can fall into different classes at different times. A radio, for example, is inventory in the hands of a dealer and consumer goods in the hands of an householder. "Implicit in the definition (of inventory goods) is the criterion that the prospective sale is in the ordinary course of business." The importance of the classification of goods is that under §9-307 (Protection of Buyers of Goods) a buyer of inventory in ordinary course of business takes free of a security interest even though perfected and even though the buyer knows of its existence. See Code comment on §9-109.

The foregoing references to the Uniform Commercial Code show a clear purpose to protect the individual buyer of goods in the ordinary course of business from a dealer in that class of goods and to give him a title good against the security interest of the financer who allows possession of the goods to remain with the dealer for the ultimate purpose of sale. It matters not, in such a case, if the buyer knows of a security interest, which, in the case before us, he did not, so long as he buys in ordinary course from a dealer.

In the case under consideration the plaintiff Murphy was a buyer of an automobile in ordinary course from a dealer in automobiles to whom possession for purposes of sale had been entrusted by the defendant bank, which had a security interest in the automo-

bile, for almost one year preceding the sale to the plaintiff.

It is of no consequence that Murphy received his bill of sale from Sales which had previously, without Murphy's knowledge, sold it to Services, because both companies were automobile dealers and Murphy was a buyer in ordinary course of business.

The conclusion reached finds support in the law as it was prior to October 1, 1958 when the Uniform Commercial Code became effective. In *Denno v. Standard Acceptance Corp.*, 277 Mass. 251, (1931) an automobile dealer sold an automobile on which the defendant financer had a chattel mortgage in violation of an express agreement not sell without the financer's consent. The financer knew that the dealer displayed mortgaged cars for sale in its salesrooms. It was the dealer's custom to sell and deliver a mortgaged car before the mortgage was paid and to remit a portion of the purchase price to the financer shortly thereafter. Of 31 mortgaged cars the dealer sold and relivered 30 before payment of the sums due to the financer. One car was freed from the mortgage before its sale. In 5 cases payment was made on the day of the sale. In the remainder from one to ten days intervened between sale and payment to the financer. One Denno bought a car from the dealer's stock. He knew in a general way that dealers financed automobiles on their premises by security devices. He did not know that the automobile which he bought was mortgaged. The dealer concealed the sale from the

financer, falsely reported its whereabouts and made no payment on the mortgage. The financer threatened to replevy. Whereupon, Denno brought a bill in equity to restrain the financer from proceeding to replevy the automobile which he had bought from the dealer. In affirming a decree restraining the replevy of the automobile and declaring a recorded mortgage thereon null and void the court had this to say:

"In the known course of the automobile business, we think a finding that permitting general dealers to exhibit and demonstrate machines gave them apparent authority to make sales, cannot be found erroneous in law. In our opinion the implied notice arising from recording a mortgage is not enough as matter of law to offset the inference of authority to sell arising from the circumstances here found. Nor is the general knowledge of automobile finance possessed by the plaintiff enough, as matter of law, to destroy his good faith in buying as he did.

"It is not essential that technical estoppel be made out to constitute conduct under G. L. c. 106, §25 (I), which precludes the owner from denying a seller's authority to sell. *Simons v. Northeastern Finance Corp.*, 271 Mass. 285, 291. The findings are not erroneous in law. The defendant (financer) is found knowingly to have put the Maykel Automobile Company (dealer) in a position to mislead the plaintiff (buyer) with reason to expect purchasers to be misled. Its equities are less than those of the plaintiff. The fact that the specific automobile purchased by the plaintiff was not shown in the wareroom is immaterial."

This was apparently the first Massachusetts case dealing with sales of mortgaged automobiles. See also *The Budget Plan, Inc. v. Savoy,* 336 Mass. 322, in which the same question was involved in a Connecticut transaction as is here presented and in which Connecticut, New York and Massachusetts law is shown to be in harmony and support this opinion.

We conclude that the plaintiff was a buyer of the Rambler automobile in ordinary course of business from an automobile dealer and that he bought free of the bank's security interest. G. L. c. 106, §9-307(1). Accordingly, the plaintiff is to have judgment and an order to that effect should be entered.

A. H. Feingold of Rockland, for the Plaintiff.
John R. McGrath of Plymouth, for the Defendant.