*Northern District*
No. 6197
## GENERAL MOTORS ACCEPTANCE CORPORATION
v.
## J. & F. MOTORS, INC., and others

*Present*: Brooks, P.J., Connolly & Yesley, JJ.

Case tried to *DeMares, J.* in the Third District Court of Eastern Middlesex No. 3722 of 1963.

*Yesley, J. This is an action for the conversion of an automobile* brought by writ dated

September 12, 1963 against a corporation and two individuals.

The case was tried on an agreed statement of facts. The only evidence received was a "Conditional Sale Contract", which is referred to in the statement and for the purposes of this appeal may be treated as a part thereof. The court found for the defendants.

On *February* 4, 1963, one Frank J. Tirella purchased a 1962 Pontiac Bonneville convertible coupe from Dick Russell Pontiac, Inc. (Dick Russell) for $2995.00, of which $600.00 was paid down. The balance of $2395.00 (plus certain charges) was financed under said "Conditional Sale Contract", executed by the buyer and seller and referred to in the agreed statement as "a security agreement". It called for the buyer to make thirty-six monthly payments of $95.18 each, commencing on March 4, 1963. Under the agreement, the seller reserved title in the car as security for the full payment of the amount due (par. #1); and the buyer agreed not to transfer or otherwise dispose of the car without the written permission of the seller (par. #2). Tirella bought the car for use primarily for personal, household or family purposes. On *February* 7, 1963 Dick Russell assigned the security agreement to the plaintiff for value. Tirella made the first three monthly payments but defaulted on the installment due on June 4, 1963, as of which

date the unpaid balance (after adjustments) came to $2764.53.

Between *February* 4 and 25, 1963, the buyer without the knowledge or consent of the plaintiff transferred the car to Russell Motor Sales, a dealer in used cars, which on the latter date sold the car to *defendant* J. & F. Motors, Inc. for $2500.00, and which in turn on *February* 28, 1963, sold it to Joseph P. LePore, son of defendant G. Joseph LePore, "for (a) valuable consideration", after doing some work on it. During the month of *May,* 1963 the plaintiff filed a financing statement with the Secretary of the Commonwealth. On *June* 17, 1963 the plaintiff made a demand upon the defendant corporation for payment of the balance due under the security agreement or for the return of the car, which demand was refused. The fair market value of the car was then $2700.00. In *February of* 1963 and at all times pertinent to this action the defendants George Fantini and G. Joseph LePore were stockholders in and directors of the defendant corporation and were the respective president and treasurer thereof.

We have before us a case stated, since the agreed statement contains all the material facts upon which the rights of the parties are to be determined. *Rogers v. Attorney General & Others,* 347 Mass. 126, 130; *Caissie v. Cambridge,* 317 Mass. 346, 347.

It was the duty of the trial justice to order the judgment required by the applica-

tion of the correct principles of law to the facts stated. *Richard D. Kimball Co. v. Medford,* 340 Mass. 727, 728, 729; *Caissie v. Cambridge,* supra, at p. 347; *Murphy v. Plymouth National Bank,* 22 Mass. App. Dec. 36, 38.

On review, we may draw from those facts any inferences that the trial justice could have drawn, G.L.c. 231, ‡126. We are not bound by the inferences drawn by the trial justice, *Caissie v. Cambridge,* supra at p. 347. Hence, we decide the questions of law involved unaffected by his decision. *Rogers v. Attorney General & Others,* 347 Mass. 126, 130.

In order to make out its case the plaintiff must show that at the time of the alleged conversion it had a general or special property in the automobile and actual possession or the right to its immediate possession. *Massachusetts Lubricant Corporation v. Socony-Vacuum Oil Company, Incorporated,* 305 Mass. 269, 271.

Under the terms of the conditional sale, the general title in the automobile remained in the conditional vendor until the full price was paid, and under the law prevailing prior to the adoption of the Uniform Commercial Code (October 1, 1958) the vendor could recover it from a *bona fide* purchaser without notice. *Marsh v. S.M.S. Co.,* 289 Mass. 302, 306. See also *Lehan v. North Main Street Garage, Inc.,* 312 Mass. 547, 548. It remains to determine whether this

law survived the Code. Article 9 thereof, incorporated into the General Laws as c. 106, §9, contains the sections applicable to security interests created by contract, including such classic devices as pledges, chattel mortgages, conditional sales, trust receipts, etc. See G.L. c. 106, §9-102 (2).

The "Conditional Sale Contract" executed by Dick Russell and Tirella was "a security agreement", G.L.c. 106, §9-105(1) (h), by virtue of which Dick Russell reserved a security "interest", G.L.c. 106, §1-201 (37). A security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors, G.L. c. 106, §9-201, unless a financing statement is required to be filed. A financing statement must be filed to perfect all security interests *except,* among others, *"a purchase money security interest in consumer goods"*, G.L. c. 106, §9-302(1) (d). Since the security interest taken by Dick Russell was "taken . . . . by [it as] the seller of the collateral to secure all or part of its price", it constituted a "purchase money security interest" (G.L. c. 106, §9-107(a) ); and since the automobile was purchased by Tirella for use primarily for personal, family or household purposes it comes within the classification of "consumer goods" (G.L. c. 106, §9-109(1) ). It follows then that a financing statement *was not required* to be filed to perfect the security interest of Dick Russell in the automobile.

The security interest attached when the security agreement was executed and the car delivered to Tirella (G.L. c. 106, §9-204 (1) ), and became perfected at the same time. (G.L. c. 106, §9-303(1) ). The assignment of the perfected security interest to the plaintiff continued in it the perfected status of the security interest, against creditors of and transferees from Tirella, (G.L. c. 106, §9-302(2) ).

■ Under the Code, then, as well as under the common law, the plaintiff's interest had priority over that of the defendant corporation, — unless defeated by the [1]exception contained in G.L. c. 106, §9-307(1) which provides that:

"A buyer in ordinary course of business . . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." "A buyer in the ordinary course of business" is defined (G.L. c. 106, §1-201 (9) as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . .".

The defendant corporation did purchase the car from a dealer, Russell Motor Sales, presumably in ordinary course.

■ The plaintiff contends, however, and rightly we think, that the defendant corpora-

tion did not thereby gain the benefit of this exception for the reason that the plaintiff's security interest was not created by Russell Motor Sales, the defendant corporation's "seller"; it was created by Tirella. By its terms the exception is in aid only of one who buys goods subject to a security interest *"created by his seller"* (emphasis supplied). This limitation in the scope of the exception may appear to be quite arbitrary and perhaps out of tune with the purpose of the exception generally, but to rule that this exception encompasses a security interest created by a seller preceding the seller who sold to the defendant corporation would do violence to the plain meaning of plain words. This we decline to do, particularly in the absence of any authority being brought to our attention to justify it.

The impact of this interpretation does not fall too harshly on the new car market where the sales to consumers are predominantly by dealers who themselves create the security interest. It is in the used car business where this pinch is felt. There, more often than not, the security interest would not have been created by the particular dealer selling to the consumer but rather by the person from whom the dealer bought the car for re-sale or a predecessor of his. However, if there is a hardship imposed by our interpretation, it is for the Legislature to remove it. In this connection, it may be noted that under the model uniform commercial code jointly pro-

mulgated by the National Conference of Commissioners on Uniform State Laws and the American Law Institute (UCC §9-302 (1) (d), a financing statement *must be filed* to perfect a purchase money security interest in an automobile required to be licensed, as distinguished from other types of consumer goods. This exception, although adopted by many other states, is not incorporated in the Massachusetts version of the Code (See G.L. c. 106, §§9-302(1) (d) and 9-109 (1) ), which does not distinguish automobiles from other consumer goods.

 Since Tirella had no authority to make a sale, but in fact was prohibited therefrom by the security agreement (par. ♯2), Dick Russell's security interest in the car continued notwithstanding the sale, G.L. c. 106, §9-306(s); *Bousquet v. Mack Motor Truck Company,* 269 Mass. 200, 201, 202; *Marsh v. S.M.S. Co.* 289 Mass. 302, 306. Under the security agreement, it had then the right of immediate possession for failure of Tirella to comply with the terms and conditions thereof (par. ♯5). See *Bousquet v. Mack Motor Truck Company,* supra at p. 202. This right inured to the plaintiff, as the assignee of Dick Russell's perfected security interest (G.L. c. 106, §9-302(2) ).

 The acts of the defendant corporation in receiving and selling the car constituted acts of dominion over it and its conversion. *New England Road Machinery Company v. The Quincy Oil Company,* 290 Mass.

242, 243; *Massachusetts Lubricant Corporation v. Socony-Vacuum Oil Company, Incorporated,* 305 Mass. 269, 271; *Manhattan Clothing Co., Inc. v. Goldberg,* 322 Mass. 472, 475; *Commercial Credit Corp. v. Stan Cross Buick, Inc.,* 343 Mass. 622, 628; and no demand upon the said defendant or refusal by it was required since its possession began with an act of conversion. *New England Road Machinery Company v. The Quincy Oil Company,* 290 Mass. 242, 244; *Geguzis v. Brockton Standard Shoe Company,* 291 Mass. 368, 371; *Massachusetts Lubricant Corporation v. Socony-Vacuum Oil Company, Incorporated.* 305 Mass. 269, 271; *Manhattan Clothing Co., Inc. v. Goldberg,* 322 Mass. 472, 475. As was stated in *Koski v. Haskins,* 236 Mass. 346, 349, quoting from an earlier case: "Demand and refusal are never necessary, except as furnishing evidence of . . . . an unlawful conversion, in an action of trover."

Therefore, the plaintiff is entitled to recover against defendant J. & F. Motors, Inc., and the trial justice was in error in finding in the latter's favor on count 1. The measure of the plaintiff's damages is the fair and reasonable market value of the car at the time of conversion, with interest from that time, *Lawyers Mortgage Investment Corporation of Boston v. Paramount Laundries, Inc.,* 287 Mass. 357, 361; *Manhattan Clothing Co., Inc. v. Goldberg,* 322 Mass. 472, 475.

■ There remains the question of the liability of the individual defendants, who were stockholders, directors and the principal officers of the J. & F. Motors. "All parties engaged in committing a conversion of the goods of another may be held jointly or severally for the wrong", *Refrigeration Discount Corporation v. Catino,* 330 Mass. 230, 235.

■ Defendant, G. Joseph LePore, the [1]treasurer of defendant J. & F. Motors, acted for it in making the sale of the car to his son. This was an act of conversion (see supra) and he is liable as having "engaged in committing (the) conversion". Defendant Fantini was the president of the corporation. The agreed facts do not show participation by him in any of the acts which constituted the conversion. An officer does not incur liability merely by virtue of his office in the corporation for a tort committed by the corporation, *Refrigeration Discount Corp. v. Catino* 330 Mass. 230, 235.

■ The plaintiff, however, seeks to impose individual liability on defendant, Fantini on the following line of reasoning: the corporation had been dissolved on December 13, 1961 by order of the Supreme Judicial Court for failure to file a certificate of condition (see G.L. c. 155, §50A); therefore, ar-

[1]Although he is identified as the president in par. No. 10 of the agreed statement, in par. No. 15 he is stated to be the treasurer and in par. No. 14, George Fantini is described as the president.

gues the plaintiff, it could not act as a corporation at the time of the acts complained of and [2]"those who acted in the transaction of its business are individually liable", citing *Fay v. Noble,* 7 Cush. 188, 194. The short answer is that the facts do not disclose any acts by Fantini individually in the purchase, repair or sale of the car. In view of this it is not necessary to determine whether on the agreed facts the transactions in question were in the course of enabling the corporation "gradually to settle and close its affairs, (and) to dispose of . . . . its property" which acts it would be permitted to perform at the times in question even though dissolved. See G.L. c. 155, §51; *Partan v. Niemi* 288 Mass. 111, 113. The finding for defendant Fantini was proper.

It is ordered that the finding for the defendant J. & F. Motors, Inc. on count 1 and for the defendant G. Joseph LePore on count 2 be vacated and that judgment be entered for the plaintiff on each of said counts in the amount of $2700.00 with interest from February 25, 1963. Judgment may be entered for defendant George Fantini on count 3. In the light of the foregoing order and opinion, on count 4, wherein they are all jointly sued. judgment may be entered for the defendants There is to be one satisfaction of the judgments entered on counts 1 and 2.

Allan R. Curhan, of Boston for Plaintiff.

Paul G. Holian, of Boston, for Defendants.

---

[2]The quotation is from p. 12 of the plaintiff's brief.