THE NATIONAL SHAWMUT BANK OF BOSTON *vs.*
CHARLES VERA.

Bristol. December 8, 1966. —February 7, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Sale,* Conditional sale. *Security Interest. Bona Fide Purchaser. Words,* "Buyer."

Under G. L. c. 106, § 9–302 (1) (d), an assignee of the vendor under a conditional sale contract covering an automobile constituting "consumer goods" within § 9–109 (1) had a perfected security interest under § 9–303 without the filing of a financing statement. [13–14]

Where a judgment creditor of the vendee under a conditional sale contract covering an automobile constituting "consumer goods" within G. L. c. 106, § 9–109 (1), caused the automobile to be sold at an execution sale on his judgment and purchased it for value and for his own personal use and without knowledge of the security interest of an assignee of the conditional vendor perfected under § 9–302 (1) (d) without the filing of a financing statement, it was held that such purchaser at the execution sale was not a "buyer" of the automobile entitled to the benefit of § 9–307 (2), and took the automobile subject to the assignee's security interest. [17]

TORT. Writ in the Third District Court of Bristol dated December 13, 1963.

The action was heard by *Horrocks, J.*

*Richard M. Reilly* (*Harry Sesnovich* with him) for the plaintiff.

No argument or brief for the defendant.

CUTTER, J. The plaintiff (Shawmut) brought an action in a District Court to recover for the alleged conversion of an automobile. There was a finding for the defendant. A report was dismissed by the Appellate Division. Shawmut appealed. The evidence is summarized below.

Shawmut was assignee of a conditional sale contract dated April 23, 1963, covering the sale of an automobile by Howard Motors Inc. (Howard) to one Gomes. There was a balance of $476.98 due under the contract. Shawmut "did not record a financing statement covering . . . [the] contract with either the Secretary of State or the [c]ity [c]lerk." Vera purchased the vehicle for $195 for his own personal use "at an auction resulting from an execution sale based on a judgment . . . [which Vera] had against Gomes." He took possession of the vehicle. The trial judge found the foregoing facts, and also that Vera "had no knowledge of" Shawmut's unrecorded security interest. He concluded that there was no wrongful taking by Vera.

Shawmut claims to be aggrieved by the trial judge's refusal of rulings requested by it. One such ruling (no. 5) was that under G. L. c. 106, § 9–503,[1] Shawmut was entitled to the immediate possession of the vehicle. The judge also refused to rule (no. 9) that a finding was warranted under § 9–303 that Shawmut had a "perfected security interest" in the vehicle and that, under § 9–302, Shawmut was not required to file a financing statement. Shawmut also claims to be aggrieved by the judge's action in granting rulings requested by Vera, including a ruling (no. 4) that Vera "having purchased the . . . [vehicle] without knowl-

---

[1] Section references are to G. L. c. 106, the Uniform Commercial Code, as adopted in Massachusetts by St. 1957, c. 765, § 1, and as amended, unless otherwise indicated.

edge of . . . [Shawmut's] security interest, for value and for his own personal or family use took . . . [it] free of any security interest."[2]

1. Section 9–109 classifies goods for purposes of secured transactions. By sub-sec. (1) "consumer goods" are those "used or bought for use primarily for personal, family or household purposes." The motor vehicle sold by Howard to Gomes was a 1957 two-door Pontiac automobile. The parties appear to have dealt with the vehicle as being "consumer goods" and the Appellate Division assumed that to be the case. Although there was no express finding on the point, we make the same assumption.

Section 9–302 (1) provides, "A financing statement must be filed to perfect all security interests except . . . (d) a purchase money security interest in consumer goods; but filing is required for a fixture under section 9–313." The Massachusetts form of the Uniform Commercial Code deliberately omitted a provision of the official draft of § 9–302 (1) (d) of the code which would have excluded motor vehicles from the exception of consumer goods.[3] This Massa-

---

[2] Other rulings given by the judge at Vera's request were (no. 1) that a financing statement must be filed "to perfect security interests in motor vehicles"; (no. 2) that a buyer takes free of even a perfected security interest if he buys without knowledge of the interest, for value, and for his own personal, family, or household purposes, if the secured party has not previously filed a financing statement; and (no. 3) that when goods subject to a security interest are left in a debtor's possession the only exceptions from the general filing requirements are those stated in § 9–302 "(1) (c) and (1) (d), other than motor vehicles."

[3] See 1957 Official Edition of the Code (Am. Law Inst. and Natl. Conf. of Commrs. on Uniform State Laws); in which (p. 197) § 9–302 (1) reads, in part, "(1) A financing statement must be filed to perfect all security interests except the following . . . (d) a purchase money security interest in consumer goods; but filing is required for a fixture under Section 9–313 *or for a motor vehicle required to be licensed*" (emphasis supplied). This italicized language appeared in the code, as recommended in 1954 House Doc. No. 2400, p. 177, and in 1955 House Bill No. 1108, p. 150. In 1957 House Bill No. 130, p. 162, the language appears in the form in which it was enacted in 1957. An explanation of the differences in the form of § 9–302 (1) (d) between the Massachusetts 1957 act and the 1957 Official Edition, appears in a compilation of Massachusetts legislative documents relating to the code (now in the Social Law Library) made in 1959 by Mr. Walter D. Malcolm, a Massachusetts Commissioner on Uniform State Laws, who was a petitioner for 1957 House Bill No. 130. This explanation reads, "The affirmative requirement [in the 1957 Official Edition] that filing was required for motor vehicles constituting consumer goods was deleted because Massachusetts has never required filing or recording of conditional sale contracts."

chusetts omission from § 9–302 (1) (d) establishes that filing is not required in Massachusetts to perfect a purchase money security interest in consumer goods (including, in Massachusetts, automobiles). See Coogan, Hogan, and Vagts, Secured Transactions under the U. C. C., p. 475, n. 35. The interest became perfected when it "attached." See § 9–303. Neither filing nor any step, other than the execution and delivery of the original conditional sale contract, was necessary to make the security interest attach, if Gomes purchased the automobile as "consumer goods." The judge should have given the ruling, numbered 9, requested by Shawmut.

2. Although Shawmut as assignee of Howard gained a perfected security interest without filing, it took certain risks in failing to file by reason of § 9–307.[4] We must consider whether the holder of a perfected purchase money security interest in consumer goods (such as this Pontiac automobile) takes the risk of a sale upon execution caused by an attaching creditor of the original consumer-purchaser of the consumer goods. Vera was an attaching creditor of Gomes, as well as the buyer at the execution sale.

The trial judge found that Vera did not know of Shawmut's perfected security interest and purchased for value for his own personal use. Vera thus was within the protection of § 9–307 (2) if he was a "buyer." The term "buyer" is not defined in art. 9 of the Uniform Commercial Code. There is a general definition of "[p]urchaser" in § 1–201 (33) as one "who takes by purchase." Section 1–201 (32) defines "[p]urchase" as including "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift *or any other voluntary transaction* creating an

---

[4] Section 9–307 reads, "(1) A buyer in ordinary course of business . . . [as defined in § 1–201 (9)] other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created *by his seller* even though the security interest is perfected and even though the buyer knows of its existence. (2) In the case of consumer goods . . . a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes . . . unless prior to the purchase the secured party has filed a financing statement covering such goods" (emphasis supplied).

interest in property" (emphasis supplied). Certainly an execution sale, from the standpoint of the judgment debtor, is not a "voluntary transaction." Cf. *Marrs* v. *Barbeau,* 336 Mass. 416, 418 (attachment of chattel not a "conveyance" under a Federal statute requiring recording of conveyances of civil aircraft). If "buyer" and "purchaser" are synonymous, Vera (since not a purchaser in a voluntary transaction) was not within the protection of § 9–307 (2).[5]

The code is by no means wholly clear concerning whether a creditor of a consumer-purchaser can be a "buyer" under § 9–307 (2) of purchase money consumer goods collateral if he knows that the goods are being sold on execution to satisfy a judgment held by him against his debtor, the original consumer-purchaser.[6] We assume that § 9–307 (2) protects one who innocently buys, for his own personal purposes, consumer goods directly from a dishonest consumer-purchaser, even if those goods are subject to a perfected security interest. It is hard to see, however, that a security interest perfected without filing would protect its holder greatly if a creditor of the original consumer-purchaser could obtain judgment against the latter, could cause an attachment of the consumer goods collateral, and could buy in the consumer goods at the sheriff's sale.

---

[5] There is no basis for holding Vera within the protection (see fn. 4) of § 9–307 (1) for (a) an execution sale is not in the ordinary course of business (see *Al Maroone Ford, Inc.* v. *Manheim Auto Auction, Inc.* 205 Pa. Super. 154, 159; cf. *Hempstead Bank* v. *Andy's Car Rental Sys. Inc.* 35 U. S. L. Week 2309 [Supr. Ct. N. Y.]), and (b) Vera did not purchase directly from Gomes who (and not the sheriff) created the security interest held by Shawmut.

[6] Little of relevance is added to what appears in the code itself by the official comments (see Uniform Commercial Code, Am. Law Inst. and Natl. Conf. of Commrs. on Uniform State Laws, 1957 Official Text with comments, pp. 656–657) which read, so far as pertinent in Massachusetts: "3. Subsection (2) deals with buyers of 'consumer goods' . . . . Under Section 9–302 (1) . . . (d) no filing is required to perfect a purchase money interest in the consumer goods . . . subject to this subsection . . . [but] filing is required to perfect security interests in such goods . . . other than purchase money interests . . . . Under subsection (2) a buyer of consumer goods . . . takes free of a security interest even though perfected (a) if he buys without knowledge of the security interest, (b) for value, (c) for his own personal, family, or household purposes . . . and (d) before a financing statement is filed. *As to purchase money security interests which are perfected without filing under Section 9–302 (1)* . . . *(d):* A secured party may file a financing statement (although filing is not required for perfection). If he does file, all buyers take subject to the security interest. If he does not file, a buyer who meets the qualifications stated in the preceding paragraph takes free of the security interest."

The rationale behind § 9–307 (2), in relation to § 9–302 (1) (d), has been explained briefly in two articles. See Coogan, Article 9 of the Uniform Commercial Code: Priorities among Secured Creditors and the "Floating Lien," 72 Harv. L. Rev. 838, 848, where it is stated, "[O]ne who buys consumer goods *from another consumer* for his own personal . . . use without knowledge of a perfected security interest takes the goods free of such interest unless the secured party had previously filed . . ." (emphasis supplied). But see p. 865.[7] See also Vernon, Priorities, the Uniform Commercial Code, and Consumer Financing, 4 B. C. Ind. & Comm. L. Rev. 531, where it was said, "A purchase money security interest in consumer goods which is perfected but unfiled is subject to being defeated by a good faith consumer-buyer of the goods *from a consumer-seller*" (emphasis supplied).

Prior to the enactment of the code, Vera, by purchasing at the execution sale, would not have taken it free of Shawmut's security interest. *Marsh* v. *S. M. S. Co.* 289 Mass. 302, 306. Cf. *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.* 343 Mass. 622, 627–628. Although the code is to "be liberally construed . . . to promote its underlying purposes and policies" (see § 1–102), there is basis in § 1–103 for regarding the code as supplemented by existing law "[u]nless displaced by the particular provisions of" the code itself. See *Stone & Webster Engr. Corp.* v. *First Natl. Bank & Trust Co.* 345 Mass. 1, 5.

---

[7] Cf. Coogan, Hogan, and Vagts, Secured Transactions under the U. C. C., § 19.02 [3] [c], where the authors say, "Since holders of purchase-money security interests in certain consumer goods . . . are not required to file to perfect their security interests, a subsequent purchaser *from the possessor of such collateral* has no means of learning of the prior security interest. To offer some measure of protection to such purchasers, the Code provides that unless the secured party files, the innocent purchaser for value who buys such collateral for his personal . . . purposes . . . prevails . . . . In counselling the secured party in this context, one must assess the risk of losing to such a purchaser against the economics and efficiency inherent in perfection without filing. . . . [U]nder subsection (2) the second purchaser must be without knowledge of the security interest" (emphasis supplied). In Mass. Bankers Assn., Bankers Manual on the Uniform Commercial Code, § 9.2, p. 140, it is said, "[A] purchase money security interest in consumer goods need not be filed at all, if the secured party is willing to take a chance that his security interest may be lost if *his debtor* sells to someone who buys for personal . . . use without knowledge of the security interest" (emphasis supplied).

We find no provision of the code which clearly indicates to us that the pre-code law, with respect to consumer-goods type automobiles sold to a consumer-purchaser on conditional sale, has been changed so that an attachment and subsequent execution sale (even to another consumer-purchaser without notice of the security interest) will wipe out the perfected security interest of the conditional vendor and those claiming that interest through the vendor. The "underlying purposes and policies" of the code, in permitting the perfecting under § 9–302 (1) (d) of certain security interests in consumer goods without filing, would not be served by subordinating such perfected interests to those of an attaching creditor of a consumer-purchaser or his trustee in bankruptcy, as lien creditors. See § 9–301 (3). See also Am. Bar Assn., Section of Corporation, Banking and Business Law, Uniform Commercial Code Handbook, pp. 308–309, 447. Unless "buyer" in § 9–307 (2) (fn. 4) is limited to innocent consumer purchasers of consumer goods, in wholly consensual and uncoerced transactions, from the original consumer-purchaser, the perfection without filing of a purchase money security interest in consumer goods would be unavailing.

We conclude that a purchase money security interest in consumer goods, perfected under § 9–302 (1) (d), must prevail over a creditor of the consumer-purchaser attaching the collateral or purchasing the collateral for his own personal use at an execution sale of the collateral to satisfy a judgment obtained by him. This interpretation of the relevant sections seems to us consistent with the underlying purposes of the code.

No very closely relevant decision under the code has come to our attention. See, however, *Re Kretzer,* 48 Berks. L. J. 121 (E.D. Pa. Bktcy. No. 24381, 1955), holding that a trustee in bankruptcy of the original consumer-purchaser does not take free of an unfiled but perfected security interest in consumer goods. A judgment creditor of the original consumer-purchaser should stand in no better position. See also *United States* v. *Sommerville,* 211 F. Supp. 843, 846–

848 (W.D. Pa.), affd. (on the basis of Federal law rather than Pennsylvania law as in the District Court) 324 F. 2d 712 (3d Cir.); *U. G. I.* v. *McFalls,* 18 D. & C. 2d (Pa.) 713, 715–717. Cf. *First Natl. Bank* v. *Stamper,* 93 N. J. Super. 150.

3. The trial judge should have made the rulings requested by Shawmut (nos. 5, 9) and erred in giving, in the light of the facts found by him, the rulings (nos. 1, 2, 4) requested by Vera, at least without suitable modifications.

*Order dismissing report reversed.*
*Case to stand for a new trial.*