*Northern District*

No. 6880

No. 6665

## GENERAL MOTORS ACCEPTANCE CORPORATION

v.

## HENRY R. TROVILLE, JR.

No. 6697

## HENRY R. TROVILLE, JR.

v.

## GENERAL MOTORS ACCEPTANCE CORPORATION

Argued: Oct. 23, 1968    Decided: Jan. 27, 1969

*Present*: Brooks, P.J., Connolly, Yesley J.J.

Case tried to *Rizzotto, J.* in the District Court of Somerville.

*Yesley, J.* These actions were consolidated for trial in the District Court of Somerville. In the first, General Motors Acceptance Corporation (GMAC) replevied a Chevrolet Corvette in the possession of Henry R. Troville, Jr. (Troville); the second is an action of tort by Troville against GMAC for the conversion of said motor vehicle arising out of the replevy thereof. There was a finding for GMAC in each case.

The cases were tried on an agreed statement of facts, the material portions of which are as follows: On August 30, 1966, one Kenneth T. Wasil (Wasil) bought the car from Tom Connelly Pontiac, Inc. (Connelly Pontiac) for $2,742.85, towards which $1100.85 was allowed for a trade-in and the balance was financed under

a security agreement labeled "Conditional Sale Contract", pursuant to which Wasil agreed to make 30 equal monthly payments commencing on September 30, 1966. On the same day (August 30, 1966) Connelly Pontiac assigned the security agreement to GMAC for value. Wasil made the first monthly payment on or about September 30, 1966, but defaulted on the remaining payments. On September 20, 1966, without the knowledge or consent of the plaintiff, Wasil sold the car to Cars Unlimited, Inc. of Cambridge, a dealer in used cars, which on October 1, 1966, sold it to Troville, who took without knowledge of the interest of GMAC. Both Wasil and the defendant bought the car "for use primarily for personal, household or family purposes". No financing statement was filed with respect to the security agreement until a filing by GMAC on December 16, 1967. The within actions were entered in May of 1967.

It was agreed at the argument on appeal that if the plaintiff was not entitled to replevy the car, the seizure thereof under the writ of replevin was a conversion for which Troville would be entitled to recover damages.

We have before us a case stated, since the "agreed facts" purport to be all of the material facts upon which the rights of the parties are to be determined. *Rogers* v. *Attorney General & others,* 347 Mass. 126, 130; *Caissie* v. *Cambridge,* 317 Mass. 346, 347. It was the duty of the trial justice to order the judg-

ment required by the application of the correct principles of law to the facts stated. *Richard D. Kimball Co.* v. *Medford,* 340 Mass. 727, 728, 729; *Caissie* v. *Cambridge,* supra p. 347; *General Motors Acceptance Corporation* v. *J. & F. Motors, Inc.,* 34 Mass. App. Dec. 160. We think that he did so in finding for GMAC in each action.

In order to make out its case of replevin, the plaintiff must show that it had property in the goods and the right to the immediate and exclusive possession thereof. *Jeffrey* v. *M.W. Leahy and Company,* 258 Mass. 548, 549; *McGeever* v. *American National Red Cross, Beverly Chapter,* 330 Mass. 239, 241, 242.

Under the "Conditional Sale Contract", Connelly Pontiac as seller reserved title (par. 1) to the car and had the right to take immediate possession thereof in the event of a default in any payment or of a failure to comply with any of the terms and conditions of the Contract (par. 5). By selling the car on September 20th without the permission of GMAC, Wasil violated a term of the contract (par. 2). He also defaulted in the monthly payments due on October 30th and thereafter. Accordingly, GMAC as assignee of the Seller had the right (par. 2) in May of 1967, when it brought its writ of replevin, to the immediate possession of the car unless Troville took free of GMAC's security interest under the contract. We proceed to that question.

The contract was a security agreement under the Uniform Commercial Code (G.L. c. 106, § 9-105(1)(h) ), by virtue of which Connelly Pontiac retained a security interest (G.L. c. 106, § 1-201(37) ).

A security agreement is effective according to its terms against purchasers of the collateral (G.L. c. 106, § 9-201), unless a financing statement is required to be filed. A financing statement must be filed to perfect all security interests except, among others, "a purchase money security interest in consumer goods", G.L. c. 106, § 9-302(1)(d).

Since the security interest of Connelly Pontiac was taken "by (it as) the seller of the collateral to secure all or part of its price", it constituted a "purchase money security interest", G.L. c. 106, § 9-107(a); and since the car was purchased by Wasil for use primarily for personal, family or household purposes it comes within the classification of "consumer goods", G.L. c. 106, § 9-109(1). It follows then that a financing statement was not required to be filed to perfect the security interest of Connelly Pontiac in the car. *The National Shawmut Bank of Boston* v. *Vera,* 352 Mass. 11, 14. The security interest attached when the security agreement was executed and the car delivered to Wasil. G.L. c. 106, § 9-204(1) and became perfected at that time. G.L. c. 106, § 9-303(1); *The National Shawmut Bank of Boston* v. *Vera,* supra p. 14. The assignment of the

perfected interest to the plaintiff continued in the latter the perfected status of the security interest against tranferees from Wasil, G.L. c. 106, § 9-302(2).

This would give the interest of GMAC priority over that of Troville, unless defeated by either of two exceptions contained in G.L. c. 106, § 9-307.

The first exception (§ 9-307(1) ) is found in this language: "A buyer in ordinary course of business .... takes free of a security interest *created by his seller* even though the security interest is perfected and even though the buyer knows of its existence" (italics supplied). Since Troville bought the car in good faith and in ordinary course from a dealer without knowledge of GMAC's security interest, he was "a buyer in ordinary course of business" (G.L. c. 106, § 1-201(9) ). However, in *General Motors Acceptance Corporation* v. *J. & F. Motors, Inc.,* supra, this Division construed this exception not to apply to a situation as in this case where the security interest was *not* created by the one (Cars Unlimited) who sold the car to the person claiming the benefit of the exception (Troville). As we said in the J. & F. Motors case, on all fours with the case at bar in this aspect,[1] if a hardship results from our interpretation, it is for the Legislature to remove it. In this connection, it may be noted that un-

---

[1] The fact that in the *J. & F. Motors case* the defendant was a dealer is not significant on this point.

der the model Uniform Commercial Code jointly promulgated by the National Conference of Commissioners on Uniform State Laws and the American Law Institute (UCC, § 9-302(1) (d) ), a financing statement *must be filed* to perfect a purchase money security interest in an automobile required to be licensed, as distinguished from other types of consumer goods. This exception, although adopted by many other states, is not incorporated in the Massachusetts version of the Code (see G.L. c. 106, §§ 9-302(1) (d) and 9-109(1) ), which does not distinguish automobiles from other consumer goods. See discussion of this in *The National Shawmut Bank of Boston* v. *Vera* supra, in f. note 3 on p. 13.

We turn now to the second exception, referred to above, found in sub-paragraph (2) of § 9-307 of c. 106, which provides that: "(2) In the case of consumer goods ......, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes ..... unless prior to the purchase the secured party has filed a financing statement covering such goods." In the case at bar, Troville bought the car prior to the filing of a financial statement, for his own personal use, without knowledge of the security interest. The vital question is whether this is a "case of consumer goods", the car having been bought by Troville from a

dealer. GMAC argues that in the hands of the dealer it was inventory (c. 106, § 9-109(4) ) and not susceptible to being classified at the same time as consumer goods, even though when sold originally by Connelly Pontiac to Wasil it fitted into that classification. The text of the opinion in *The National Shawmut Bank of Boston* v. *Vera,* supra, pp. 15, 16, seems to support GMAC's contention. It is stated there:

> "We assume that section 9-307(2) protects one who innocently buys, for his own personal purposes, consumer goods directly from a dishonest *consumer-purchaser* (emphasis supplied), even if those goods are subject to a perfected security interest. It is hard to see, however, that a security interest perfected without filing would protect its holder greatly if a creditor of the original consumer-purchaser could obtain judgment against the latter, could cause an attachment of the consumer goods collateral, and could buy in the consumer goods at the sheriff's sale.
>
> The rationale behind section 9-307(2), in relation to section 9-302(1) (d), has been explained briefly in two articles. See Coogan, Article 9 of the Uniform Commercial Code: Priorities Among Secured Creditors and the 'Floating Lien', 72 Harv. L. R. 838, 848, where it is stated, '[O]ne who buys consumer goods *from another consumer* for his own personal**** use with-

out knowledge of a perfected security interest takes the goods free of such interest unless the secured party had previously filed ****' (emphasis supplied). *** See also Vernon, Priorities, the Uniform Commercial Code, and Consumer Financing, 4 B.C. Ind. & Comm. L.R. 531, where it was said, 'A purchase money security interest in consumer goods which is perfected but unfiled is subject to being defeated by a good-faith consumer-buyer of the goods *from a consumer-seller'* (emphasis supplied).''

A recent case, *Everett National Bank* v. *Deschuiteneer,* decided by the Supreme Court of New Hampshire on July 17, 1968, squarely presented this issue of whether ''§ 9-307(2) of the Uniform Commercial Code is limited in its application to transactions between a consumer seller and a consumer buyer.'' In that case, an automobile was sought to be replevied by the assignee and holder of a conditional sales contract, from ''a consumer'' who had subsequently bought it from a dealer. The court, after making an exhaustive study of the comments appended to pertinent sections of the Uniform Commercial Code, the discussions of text writers and commentators on the point and the dictum in The National Shawmut Bank case, cited supra, concluded (p. 3) ''.... the goods must be consumer goods in the hands of both buyer and seller in order to fall under § 9-307

(2)." We agree. Cars Unlimited, Inc. was a dealer. Accordingly, the car in its hands was not "consumer goods" and the exception in § 9-307(2) is therefore not applicable.

Since we hold that the exceptions stated in both paragraphs (1) and (2) of § 9-307 are inapplicable, GMAC's security interest prevails over that of Troville. The trial justice properly found in favor of GMAC in both cases.

This being a case stated, requests for rulings have no standing. *Western Massachusetts Theaters, Inc.* v. *Liberty Mutual Insurance Company*, 354 Mass. 655 and cases cited at 657. In any event, we find no error in the denial by the trial justice of Troville's requests for rulings.

We note in the docket of *General Motors Acceptance Corporation* v. *Troville* (the replevin action) that there was a finding for damages for the plaintiff in the amount of $2092.64. This was not alluded to in the report or in briefs. On the agreed facts, however, there appears to be no basis for an assessment of monetary damages in favor of the plaintiff (who replevied the car) by reason of any unlawful taking or detention on Troville's part. See G. L. c. 247, § 13.

Accordingly, it is ordered that the assessment of damages in case No. 6665 of $2092.64 be vacated. The finding for the plaintiff therein, and the finding for the defendant in case No. 6697, are to stand. **Report dismissed.**

CURHAN and CURHAN
  Attorneys for General Motors Acceptance Corporation
JAMES McDANIEL, JR.
ROBERT WOOLF, Esq.
  Attorneys for Henry Richard Troville, Jr.