*Southern District*

# No. 131

## LEONARD F. PARKER
### v.
## RAYMEN A. MORRELL

Argued: March 17, 1976. Decided: Sept. 22, 1976

Case tried to *Sullivan, J.,* in the District Court of Southern Norfolk. Number: 26068.

Justices: Lee, P.J., Rider, Welsh, J.J.

**Welsh, J.** This is an action of contract to recover certain monies paid to the plaintiff pursuant to a written agreement. The answer consisted of a general denial, payment, estoppel, statute of limitations and accord and satisfaction.

The case was heard by the trial justice upon a statement of agreed facts, which, when the only evidence introduced is deemed to be a "case stated." *Redden v. Ramsey,* 309 Mass. 225, 227 (1941). *Associateds Discount Corp. v. Gillineau,* 322 Mass. 490, 491 (1948). *General Motors Acceptance Corporation v. Troville,* 43 Mass. App. Dec. 96, 100, 106 (1969).

In such cases, it is the duty of the trial justice and the reviewing court to order the correct judgment upon the agreed facts, and requests for rulings of law have no standing. *Quintin Vespa Co., Inc. v.*

*Construction Service Co.,* 343 Mass. 547, 551, 552 (1962). *Simmons v. Cambridge Savings Bank,* 346 Mass. 327, 329 (1963).

■■. *A* "case stated" permits the trial justice and the appellate court to draw inferences from the facts and documents included, unless the parties expressly provide that no inferences may be drawn. *Hall v. Opacki,* 47 Mass. App. Dec. 106, 11, 122 (1971). *Cassie v. Cambridge,* 317 Mass. 346, 347 (1944).

■■. The interpretation of a written contract is a matter of law upon which an appellate court is not bound by the conclusions of the trial justice unless in part determined by factual matters outside the document. *Robert Industries v. Spence,* 362 Mass. 751, 755 (1973).

In our opinion, the trial justice correctly concluded that the instrument in question was an option and that the plaintiff is not entitled to recover the monies paid to the defendant under the agreement.

The document begins: "In consideration of Two Hundred Fifty Dollars ($250.00) and other good and valuable consideration . . . (Plaintiff) hereinafter called the seller, grants to (defendant) . . . hereinafter called the purchaser, the option to purchase for the sum of $60,000.00 . . . (description of real estate in Brockton inserted)."

The instrument then recites that the option may be exercised by giving notice in writing to the seller at any time before August 1, 1973, with appropriate provision for the mode of giving notice. Then follows the provision that the purchaser may extend the time for exercising the option until October 1, 1973 by giving notice in the manner previously prescribed, before August 1, 1973 and by paying the additional sum of $750.00 along with the notice.

Immediately after these provisions, the following language appears: *"If the Purchaser shall exercise the option* as aforesaid, the seller agrees to sell and the

buyer agrees to buy the above described property *on the following terms and conditions:*" (emphasis supplied). There follow six enumerated paragraphs providing, inter alia, for conveyance of the property on or before the 60th day after exercise of the option, free of tenants or occupants and free of encumbrances, with certain specified exceptions, and payment of a commission to a named broked by the seller. The agreement is executed as a sealed instrument by both plaintiff and defendant.

The second enumerated paragraph provides that: "This agreement shall be contingent upon the entire premises being zoned to permit the construction of the buyer's building for the retail sale and storage of lighting fixtures and allied merchandise and the issuance of all necessary licenses and permits to permit the construction of the said building and operation of the said business upon the premises. Should the premises not be so zoned or should the necessary licenses or permits not be obtained, the purchaser may elect to terminate this agreement in which event any *deposit* made by him shall be returned to him forthwith and without deductions." (emphasis supplied).

Paragraph number 3 provides that within 7 days *after the exercise* of the option, "The purchaser shall pay to the seller the sum of . . . . $5,000.00 . . . . *as a deposit.*" The said deposit is to be held by the attorney for the seller pending performance of the agreement. "The balance of $54,750.00 or $54,000.00 shall be paid at the time of passing." (emphasis supplied).

The time for exercise of the option was extended from August 1, 1973 to October 1, 1973 and the additional $750.00 was paid the defendant as required. The zoning board, on petition of the defendant granted a variance for the use in question on July 10, 1973, but a petition to annul the variance was filed in the Brockton District Court. The report is silent regarding the ultimate disposition of the petition. Apparently, one of the petitioners was a

brother of the defendant. There is no evidence in the report suggesting any sort of collusion between the brother and the defendant to defeat the petition for variance and thus abort the agreement by preventing the happening of one of its express conditions. Evidently, the trial court did not find collusion. We likewise are not disposed to make such an inference, although reasonable inferences from the agreed facts are generally permissible for appellate court on a "case stated", unless otherwise stipulated. *Cassie v. Cambridge,* 317 Mass. 346, 347. *United States Fidelity & Guaranty Co. v. English Construction Co.,* 303 Mass. 105, 108, 109 (1939).

Plaintiff contends that the language in the document providing for the return of any deposit, if the necessary municipal approvals were not obtained, entitles him to receive back from the defendant the $1,000.00 paid. We do not so construe the instrument.

We are of the opinion that the sum of $1,000.00 paid was the consideration for the option and the extension of the time to exercise the option, and not a "deposit". The option portion of the agreement and the portion of the instrument which delineates the terms of the agreement if the option is exercised are separate and distinct. The clause providing for the return of the deposit if the conditions regarding zoning and licenses were not met refers solely to the deposit required to be paid subsequent to the notice of intent to exercise the option, and not to monies paid for the option itself. Not only does the instrument itself refer separately to the consideration for the option and the deposit to be paid upon its exercise, but also the monies paid for the option were paid directly to the defendant, whereas the "deposit", so called, was to be held by the attorney for the seller, subject to the terms of the agreement, to be duly accounted for at the time of performance. In ascertaining the intent of the parties, it would be most unusual, to say the least, that some of the deposit be held by an agent

and some held by the seller if all such monies were to be returned upon termination of the agreement.

Courts generally strive to construe contracts so as to arrive at the intent of the parties in the light of the commercial context. *Radio Corp. of America, v. Raytheon Mfg. Co.,* 300 Mass. 113, 117 (1938). *Kagan v. Industrial Washing Machine Corporation,* 182 F. 2d 139 (1950).

Contracts must be construed as a whole, and the intention of the parties gleaned from the entire instrument, not from detached portions. *Pittsfield & c. R.R. v. Boston and Albany R.R.,* 260 Mass. 390, 396 (1927).

Each and every word should be given its natural force, insofar as the same is practicable. *Crimmins & Pierce Co. v. Kidder Peabody Acceptance Corp.,* 282 Mass. 367, 375 (1933). *Winchell v. Plywood Corp.,* 324 Mass. 171, 180 (1949).

 Furthermore, we cannot overlook the fact that it was the plaintiff's attorney who prepared the instrument. Assuming *arguendo* that ambiguous or doubtful language was used here such doubt or ambiguity must be most strongly construed against the party employing the language. *Schaffer v. Hotel and Railroad News Co.,* 266 Mass. 276, 277 (1929). *Morse v. Boston,* 260 Mass. 255, 262 (1927).

The structure of the agreement, considered as a whole, militates against the construction contended by the plaintiff. References to the consideration for the option and the deposit are found in entirely different provisions, and separated by the significant clause, "If the purchaser shall exercise the option . . . ."

> "An option to purchase real estate is a unilateral contract by which the owner of the property agrees with the holder of the option that he has the right to buy the property according to the terms and conditions of the contract. By such an agreement the owner does not sell the land, nor does he at the time contract to sell. He does, how-

ever, agree that the person to whom the option is given shall have the right at his election or option to demand the conveyance in the manner specified. It is merely the right to an election which has been sold and the owner of this right is not bound to complete the sale . . . ." *Morgan v. Forbes,* 236 Mass. 480, 483 (1920).

The price of the option and the price of the property which is the subject of the option have long been recognized by legal scholars as distinct, one from the other.

"The difference between price and consideration is perhaps even more obvious in the case of an option contract. In return for $50.00 in hand, paid, the seller promises to transfer land or goods on payment of $1,000.00 by the buyer within 30 days. This is a unilateral contract, the buyer having the 'option' between paying and not paying, and having made no promise. Here the consideration for the seller's promise is the actual payment of $50.00. But that is not the price of his land or that price is a condition of the seller's duty to goods; the price is $1,000.00 and the payment of transfer, although it is not the consideration for his conditional promise to transfer." Corbin, *Contracts* (one Vol. Ed., 1952) §501. *Accord:* Williston & Thompson, *Selections from Williston's Treatise on the Law of Contracts* (Rev. Ed., 1938) §25.

We take the word, "deposit," as used in the instrument under consideration, to mean the placing of money as an earnest or security for the performance of the terms of the contract of sale, which contract would come into existence when and if the option was exercised. Black's *Law Dictionary* (3rd ed., 1944) P. 558. *Larson v. Metcalf,* 201 Iowa 1208. Compare: *White v. Dahlquist Manuf. Co.,* 179 Mass. 427, 432 et seq. (1901).

Plaintiff contends that the consideration paid for the option ought to be deemed a deposit since the agreement provides that credit is to be given to the plaintiff on the purchase-price if the option is exercised. The short answer is that the option was not exercised in accordance with the terms, so the credit need not be given. Further such a similarity is superficial and does not, in our view, transform the consideration for the option into a deposit. Many options do in fact contain similar provisions that some or all of the amount paid therefore will be credited towards the purchase price of the subject matter if it is exercised. It is not uncommon that leases containing options to purchase during the term or at the expiration thereof stipulate that a portion of the rents paid will be credited towards the purchase price of the property, if the option is exercised. No one would seriously contend that a lessee might receive credit for such portion if he does not choose to exercise the option, or indeed if he is in breach of other covenants of the lease prior to giving notice of intent to exercise the option.

We deem it unnecessary to consider in detail the further question of whether or not the plaintiff adequately satisfied the requirements of expending effort reasonably calculated to bring about the happening of a condition of the contract. There is an excellent discussion of this issue in a case involving a somewhat similar situation, in which the Supreme Judicial Court, Per Cutter, J., held that the plaintiff failed to show that he had expended all reasonable efforts not involving expenses disproportionate in the circumstance to obtain planning board approval for a proposed subdivision, where the agreement gave the buyer the election to terminate the contract and have his deposit repaid. *Stabile v. McCarthy,* 336 Mass. 399, 402 et seq. (1957).

There being no prejudicial error, let an order enter **dismissing the report. SO ORDERED.**